**STATE of Missouri, Respondent,**

v.

**Jimmie TAYLOR, Appellant.**

**No. 56534.**

Supreme Court of Missouri,
Division No. 2.

Nov. 13, 1972.

———◆———

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

John R. McFarland, St. Louis, for appellant.

STOCKARD, Commissioner.

Jimmie Taylor, charged as an habitual criminal (four previous convictions) with second degree burglary, was found guilty by a jury and sentenced by the court to imprisonment for a term of ten years. Appellate jurisdiction is in this court because the notice of appeal was filed prior to January 1, 1972.

A jury reasonably could find that in the early morning of December 17, 1967, appellant and two companions broke and entered the Joseph Beety Plumbing Company. One of the police officers who arrived at the scene testified that he saw appellant come out of the door of the building which had been burglarized. Appellant was arrested, and after some resistance on his part, he was taken to police headquarters. His clothing was removed, and upon examination there was found in a glove and in a pocket to his coat two slivers of wood with paint on them which matched the wood and paint of the door where the breaking had occurred.

Appellant asserts in his first point that the trial court erred in admitting into evidence "the police laboratory report" because (a) it was not admissible under the business records act, and (b) if admissible under that act, the "conclusions of Cordell Brown were not admissible."

During the testimony of Joseph Stevens, a chemist for the St. Louis Metropolitan Police Department, State's Exhibit 36 was identified. It was a laboratory report made by Cordell Brown, who at the time of making the report was the "Chief Criminalist" for the St. Louis Metropolitan Police Department, but who at time of trial was employed in Denver, Colorado. Mr. Stevens testified that Exhibit No. 36 had been prepared by Mr. Brown in the ordinary and usual course of business of the Police Department, and that in his present position he had custody of the document and had obtained Exhibit No. 36 from the files. On direct examination Mr. Stevens related several things shown by the report, but when Mr. Stevens started to relate that the report indicated that Mr. Brown found the slivers of wood in the right glove and in the right coat pocket, appellant objected because the State "wants to offer the examinations that were made by Cordell Brown and I would, for clarification, like to know whether or not the examinations were made by Joe Stevens or Cordell Brown. If Brown made them, he [Stevens] can't testify." The court indicated that a little more foundation was necessary to qualify the report as a business record. It was then brought out that the record had been made immediately after the examination, and that the examination by Mr. Brown was made within a week after the material was received. Mr. Stevens was then asked to state what was shown by the record, and appellant objected "to any recitation of the laboratory analysis coming from Joe Stevens" because the examination was made by Cordell Brown. The court then ruled that the report qualified as a business record, and that the witness could relate "what this report says." The witness then stated: "The clothing

items were processed for the removal of superficial debris. An examination of the right glove disclosed the presence of a fragment of wood embedded in the fabric of the cuff. A microscopic examination of the debris from the right coat pocket disclosed the presence of a fragment of wood. A microscopic examination disclosed that the gray paint on the wood fragments from the glove and right coat pocket matched the gray paint on the wood from the scene." The fragments, contained in small boxes, were introduced in evidence as Exhibits No. 37 and No. 38. Subsequently, the State offered in evidence Exhibit No. 36, the laboratory report. The objection was that the report was not sufficiently identified as a business record. The Court then refused to admit the whole report, and commented that the "portion that has been read is in evidence and to that extent it is in." There followed a discussion about blocking out portions of the report or tearing off portions of it. The Court stated that it would not permit the jurors to read the whole report, and referring to portions which had been read to the jury, the court said, "it's been read and that's sufficient." The entire report was not admitted into evidence.

■ The purpose of The Uniform Business Records as Evidence Law, §§ 490.-660–490.690, RSMo 1969, V.A.M.S., is to enlarge the operation of the common law rule providing for the admission of business records as an exception to the hearsay rule. State ex rel. State Highway Commission v. Koberna, Mo., 396 S.W.2d 654, 666. In order for a record to qualify, there "must, of course, be a preliminary showing of the identity of the record, the mode and time (or times) of its preparation, and that it was made in the regular course of business; if this, and the 'sources of information,' are sufficient 'in the opinion of the court,' then the record, generally, is admissible." Allen v. St. Louis Public Service Company, 365 Mo. 677, 285 S.W.2d 663, 666, 55 A.L.R. 2d 1022. The trial court must of necessity have a reasonable discretion in its deter-

mination of whether the statutory requirements have been met. State v. Durham, Mo., 418 S.W.2d 23, 30. In view of the testimony of Mr. Stevens, previously set forth, the trial court did not err in its ruling that the report qualified as a business record.

In the argument portion of his brief appellant sets forth that portion of the report read by Mr. Stevens, and above quoted, and asserts that the "trial court abused its discretion" in permitting that portion of the report to be read to the jury because (a) Cordell Brown had not been qualified as an expert witness, (b) the portion read contains nothing to connect the samples tested to samples from the scene, and (c) Cordell Brown was not available for cross-examination.

We have set forth the complete objections made by appellant to the reading of portions of the report prepared by Cordell Brown. There was no objection that Cordell Brown was not qualified as an expert, or that there was no connection shown between the samples of wood from appellant's clothing and the samples of wood from the scene. Also, there was no mention of these matters in the motion for new trial. However, we note that there was testimony that Mr. Brown was the "Chief Criminalist" for the St. Louis Metropolitan Police Department, and that he "had about a thousand cases" when he left that employment. Also, other testimony did establish the connection between the wood samples.

■ The contention that Cordell Brown was not available for cross-examination is answered by Allen v. St. Louis Public Service Co., 365 Mo. 677, 285 S.W.2d 663, 55 A.L.R.2d 1022, where it was ruled: "Objections to such [business] records as hearsay and as depriving a party of the right of cross-examination are, therefore, not effective if the records have been properly qualified under the Uniform Business Records Act. * * * Since the hearsay objection is obviated, we see no reason why

a proper expert medical opinion contained in a hospital record should not be accorded dignity equal to that of a similar opinion from the witness stand; to preserve the right of cross-examination intact as to such matters would be to repeal the statute." We find no merit to appellant's first point.

The state offered in evidence Exhibits No. 34 and No. 35 which were identified as wood chips from the door of the building and debris from floor. Exhibit No. 36 was the police laboratory report previously referred to, and Exhibit No. 37 was a "standard laboratory pill-box-type container" which contained a sliver of wood taken from appellant's coat pocket. Appellant's second point is that the court erred in admitting into evidence these exhibits "because the chain of possession had been broken."

■ There was no objection to the admission in evidence of Exhibits No. 34 and No. 35, and for that reason no issue is preserved for appellate review. State v. Howard, Mo., 449 S.W.2d 662. Exhibit No. 36 was the laboratory report. As previously noted, it was qualified as a business record, it was not admitted in evidence in its entirety and appellant made no objection to the parts read from it on the basis now presented.

■ Exhibit No. 37 was objected to on the basis now asserted, but we find no merit to the contention. The business record established that Mr. Brown had obtained a sliver of wood from the coat pocket of appellant. The laboratory number on the box corresponded with the number on Mr. Brown's report which referred to the pocket of appellant's coat, otherwise identified as Exhibit No. 33. Exhibit No. 37 was obtained from the police files which were kept and maintained by Mr. Brown when he was with the department, and by Mr. Stevens after Mr. Brown left.

In State v. Rose, Mo., 428 S.W.2d 737, in discussing the contention there made that there was no sufficient chain of possession, this court stated: "It is not necessary that some witness must have continually watched an exhibit or kept it in his personal possession. The purpose of such a requirement is to prevent tampering or alteration of exhibits or any substitution." In this case the exhibit was turned over to and kept in the regular manner by the police laboratory. There is not the slightest indication that there was any improper tampering with the exhibit. We find no merit to this point.

■ Appellant's third point is that the court abused its discretion in not allowing him to recall Police Officer Cartelyou. What actually occurred is not entirely clear. Officer Cartelyou testified for the State. On cross-examination he testified that he saw appellant walk "to the back of the truck and down the street." He was asked: "He didn't come in front of the truck?" and he replied, "I don't recall, but I'm sure this is where the thing happened; it's been nine months ago, but I think here." The record shows that Officer Cartelyou was called by appellant, but from the discussion it appears appellant sought to recall him for additional cross-examination. He was asked: "I believe you also testified that you saw one walk in back of the truck and walk east—." There then followed a discussion, and appellant stated he wanted to impeach the officer by showing that "this officer testified during the motion that he saw the suspect walk in front of the truck * * * and he testified yesterday * * * that the defendant walked in back of the truck." There is no hearing on any motion included in the transcript. Appellant's counsel further stated that "when I asked him that question I didn't have the other record." The reference to "that question" apparently was the question asked the officer on cross-examination, which is quoted above.

■ We find no prejudicial error in the ruling of the trial court. First, this was an attempt to impeach the officer on a most trivial matter. The truck was parked at the front door of the building. Whether

appellant walked behind it or in front of it and then eastward was of little or no consequence. It is not error to exclude offers to impeach on immaterial or collateral matters. State v. Miles, Mo., 412 S.W. 2d 473. Also, this was a matter which could have been brought out when the officer was on the stand; at least the foundation for later impeachment could then have been brought out. Whether appellant should be permitted at this stage of the trial to recall the officer to lay a foundation for impeachment was in the discretion of the court, and the record does not demonstrate an abuse of that discretion. State v. Neal, 350 Mo. 1002, 169 S.W.2d 686, 696.

■ Appellant next asserts that the trial court abused its discretion in permitting the State to recall Robert Beety as a rebuttal witness. Felton Sykes testified that he and Lawrence Tillman had burglarized the building, but that appellant had no part in the burglary. Sykes also testified that he had seen copper tubing "all over the place." The State's position was that appellant participated in the burglary, and it wanted to show by Mr. Beety on rebuttal that copper tubing was not stored on the east side of building. This would tend to show that Sykes had not been in the building where the copper was stored, but that he had an accomplice who had brought the copper to the truck. This rebuttal testimony tended to refute the testimony of Sykes and to establish the State's theory. The court did not abuse its discretion in permitting the rebuttal testimony. See State v. Williams, Mo., 442 S.W.2d 61, 65.

■ Appellant's next contention is that the court erred in refusing to give an instruction defining the term reasonable doubt. There is no complaint as to the instructions which were given, and which advised the jury that the State had the burden to establish the guilt of appellant beyond a reasonable doubt. Appellant cites such cases as State v. Wiley, Mo., 442 S.W. 2d 1, and State v. Payne, Mo., 452 S.W.2d

805, where a definition of the term was held not to be improper. He then argues that a definition of reasonable doubt must be given. However, it has long been the rule in this State that such a definition is not required. In State v. Robinson, 117 Mo. 649, 23 S.W. 1066, this court said: "It is difficult to explain simple terms like 'reasonable doubt' so as to make them plainer." In State v. Talmage, 107 Mo. 543, 17 S.W. 990, this court commented critically on attempts to define "reasonable doubt" and said, "Reasonable doubt is reasonable doubt, and that is about all that can be said in regard to it." In State v. Lafferty, Mo., 416 S.W.2d 157, 161, this court ruled: "Obviously, if no definition of reasonable doubt is required (or even desirable), the court committed no error in failing or refusing to define it." We adhere to that rule.

Appellant's last point briefed by his counsel is that the court erred in overruling his objection to the reference by the State's attorney "to the phantom rapist case."

On direct examination Mr. Stevens testified that Cordell Brown had moved to Denver, Colorado, and for that reason was not available to testify. It was for this reason that Exhibit No. 36, the laboratory report prepared by Mr. Brown, was qualified as a business record. On cross-examination appellant brought out that Mr. Brown had returned to St. Louis to testify on two occasions in other cases. On redirect examination the following occurred:

Q. Mr. Stevens, I think on those two occasions, it was the same case that he testified, was it not?

A. Yes.

Q. For the phantom rapist, Milton Brookins?

A. Yes.

Q. And that was the only time he has been brought back since?

A. To the best of my knowledge.

Q. There are many, many cases besides the phantom rapist that he worked on?

A. Quite a number, yes, sir.

At this point appellant first objected "to the reference * * * to the phantom rapist" on the ground that it had no bearing on this case. The request was "that it be stricken and the jury be instructed to disregard it." In answer, the State's attorney said: "Mr. Vancil [appellant's counsel] had opened this up in his cross-examination and I think I am entitled to show why. I merely wanted to show he was brought back on two cases, or really one case that had a lot of publicity, and the State doesn't have the money to bring him back on all these cases, and I think I should be able to show it was impossible to bring the man back on a burglary charge from Colorado." The court stated: "I think he was entitled to show it. On that ground it will be overruled. I think it's material in view of the cross-examination."

 It may be that the reference to the "phantom rapist" was not necessary, but there was nothing said to imply that appellant was in any way connected with that crime or person. In fact, the comment clearly shows that the reference was to a different case. In these circumstances, the trial court is necessarily invested with considerable discretion. Also, the court was able to evaluate effect of the remarks, and whether any remedial action was called for. We find no abuse of discretion.

Appellant contends pro se that the transcript is in error when it shows that the question asked Mr. Stevens by the State's attorney included the words "including Milton Brookins." However, the words are included in the question shown in the transcript, and the transcript has been approved.

 Appellant also contends pro se that the trial court erred in overruling an objection to the statement by the attorney for the State in oral argument "as to the color red on the gloves of appellant." The oral argument of counsel is not included in the transcript, and there is nothing before us for review.

 Appellant next contends pro se that the court erred in excluding a letter from the United States Department of Commerce which set forth the weather conditions on December 17, 1969. It was excluded by the court because it contained no authentication. We do not see how it could have been relevant to any issue except possibly the time of sunrise as bearing on the amount of light present. In the absence of proper authentication, the letter was properly excluded from evidence.

The judgment is affirmed.

HOUSER, C., concurs.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.