STATE of Missouri, Plaintiff-Respondent,

v.

David F. DIAMOND,
Defendant-Appellant.

No. 36384.

Missouri Court of Appeals,
St. Louis District,
Division One.

Jan. 6, 1976.

Theodore S. Schechter, Clayton, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Tim Verhagen, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

DOWD, Judge.

Defendant appeals from his conviction for tampering with a motor vehicle (a 1970 Chevrolet) without the owner's permission. § 560.175(1) RSMo 1969. He was sentenced to two years imprisonment under the Second Offender Act, § 556.280 RSMo 1969. We reverse.

On June 21, 1973, a 1970 Chevrolet was stolen in the City of St. Louis. According to Kenneth Sanders, a witness for the state, he, the defendant, and Ernest Jumper stripped the auto that evening in his residential garage. The three men were participating in a plan, whereby defendant and Jumper stole autos, then paid Sanders $200 for the use of his garage and for his help in dismantling the autos.

Defendant did not testify. Ernest Jumper was the principal defense witness. On cross examination Jumper acknowledged he had been charged with the theft of a 1968 Plymouth GTX but he denied stealing the auto. He also denied that he was at Sanders' house on June 21 and that he had ever taken any autos apart there.

To rebut Jumper's cross examination assertion that he had not stolen a 1968 Plymouth, the state produced evidence that a 1968 Plymouth GTX was stolen on June 2, 1973. Sanders told how he and Jumper had stolen a 1968 Plymouth GTX auto on June 2 and then drove it to Sanders' house and the next day Sanders and Jumper removed the auto's windshield and changed the ID number on the dashboard.

The state also rebutted Jumper's cross examination testimony that he was not at Sanders' home on June 21 and that he had never taken any cars apart there. A 1969 Buick Skylark was also stolen on June 21, 1973. This stolen car contained a child's car seat. A detective testified that he saw the stolen Buick at Sanders' home about 2 p. m. that same day. About 4:30 p. m. that same day he observed Sanders drive the Buick to the front of his garage. Mrs. Sanders said

both Jumper and defendant were at the house on the afternoon of June 21, and defendant had given her a child's car seat. Sanders said he first saw the Buick when he arrived home from work that day. He, Jumper and defendant took some parts from the Buick's front end, and then defendant drove the Buick away.

Defendant's first contention is that the trial court erred in admitting over objection the rebuttal testimony concerning the theft of the 1968 Plymouth GTX. Defendant argues that since Jumper denied stealing the car on cross examination, the state was bound by his answer and could not offer evidence to the contrary. We agree.

■ The well-established rule in Missouri is that when a cross examiner questions a witness about specific acts collateral to the issues in dispute, he is bound by the witness' answer and cannot offer contrary evidence (except for a criminal conviction, § 491.050 RSMo 1969). *State v. Williams,* 492 S.W.2d 1 (Mo.App.1973); *State v. Johnson,* 486 S.W.2d 491 (Mo.1972); *Wiesemann v. Pavlat,* 413 S.W.2d 23 (Mo.App.1967).

■ The critical question is whether Jumper's alleged theft of the Plymouth was collateral to the disputed issues in this case. A collateral fact or issue has been defined as one that is "subsidiary or secondary." *Crabtree v. Kurn,* 351 Mo. 628, 173 S.W.2d 851, 858 (1943).

The only issue in this case was whether the defendant illegally tampered with a 1970 Chevrolet on June 21, 1973. The state's theory, however, is that the defendant participated in a scheme wherein he and Jumper stole cars and then paid Sanders both for his help in dismantling the cars and for the use of his garage. The state stressed this alleged scheme in its opening statement, during the testimony, and in its closing argument. The state contends that evidence of extraneous criminal acts by Jumper committed in the furtherance of

this alleged scheme is not only relevant, but also pertains to the major issue in the case and is not a collateral matter.

Despite the state's theory, the fact remains defendant was only charged with tampering with a 1970 Chevrolet on June 21, 1973. He was not charged with stealing or tampering with the 1968 Plymouth GTX on June 2–3, 1973. Nor was he charged with stealing or tampering with the 1969 Buick. Nor was he charged with conspiracy to steal or tamper with motor vehicles.

Likewise, the rebuttal evidence concerning the Plymouth failed to implicate defendant in this alleged illegal scheme. The rebuttal testimony of Sanders and the detective concerning the stealing of the Plymouth GTX never included any evidence of any participation by the defendant. According to Sanders, only he and Jumper participated in the June 2–3 theft and dismantling of the Plymouth GTX.

■ We believe the trial court erred in admitting the rebuttal evidence concerning the theft of the Plymouth, and we believe the probable effect of this evidence was so prejudicial as to mandate a reversal of the conviction and remand of the cause. Defendant was charged only with tampering with a 1970 Chevrolet, not with the theft of the Plymouth GTX; and the rebuttal evidence totally failed to connect defendant in any way with the theft of the Plymouth GTX.

■ With defendant exercising his right not to testify, the principal defense witness was Jumper. Since Jumper testified (1) he and the defendant were good friends (2) he, defendant and Sanders knew each other and (3) he and defendant had met at Sanders' home at least a few times, the rebuttal testimony concerning the theft of the Plymouth GTX by Jumper and Sanders could easily have led the jury to believe the defendant was guilty of the charge merely because of his association with the two oth-

er men, and thus establish defendant's "guilt by association." The jury could easily have confused the primary issue of defendant's guilt with the collateral issue of whether Jumper stole the Plymouth GTX.

Respondent further urges the rebuttal evidence was admissible to show Jumper's bias. Not so. Jumper's bias had already been clearly established on cross examination, when Jumper said he and defendant were "pretty good friends," but that he believed Sanders to be "a pretty lowdown person," who was trying to "frame" him.

Respondent argues that the case of *State v. Taylor*, 486 S.W.2d 239 (Mo.1972), presents virtually an identical fact situation and is dispositive of the instant case. We disagree. In *Taylor* defendant was charged with second degree burglary. A defense witness testified he and another had burglarized the building, but that defendant had no part in the burglary. The defense witness also said he had seen copper tubing "all over the place." The state's rebuttal evidence was that there was no copper tubing stored in the east side of the building, thus tending to show the defense witness had not been in the building but that he had an accomplice (the defendant) who had brought the copper from inside the building to the truck. The rebuttal evidence not only refuted the testimony of the defense witness, but also supported the state's theory that defendant had actually been in the burglarized building. Thus the rebuttal evidence in *Taylor*, unlike the instant case, tended to directly prove defendant's guilt of the specific crime charged.

Defendant relies on the well-established rule that proof of the defendant's commission of separate and distinct crimes is not admissible unless within one of the exceptions to show motive, intent, absence of mistake or accident, a common plan, or identity. *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304, 307 (banc 1954); *State v. Fox*, 510 S.W.2d 832, 838 (Mo.App.1974). Such proof must have some legitimate tendency to *directly establish* the defendant's guilt of the charge for which he is on trial. If the court does not clearly perceive the connection between the extraneous criminal transaction and the crime charged, the accused should be given the benefit of the doubt and the evidence should be rejected. *State v. Boyer*, 476 S.W.2d 613, 616 (Mo.1972). The admission of such evidence should be subjected to "rigid scrutiny," because "the inevitable tendency of such evidence is to raise a legally spurious presumption of guilt in the minds of the jurors." *State v. Reese*, supra, at 307.

The state's theory of the case was that defendant, Jumper and Sanders were part of a car theft scheme. The state sought to introduce the evidence of the thefts of the Plymouth GTX and Buick under one of the exceptions listed above—that evidence of other crimes is competent to prove the specific crime charged if it tends to establish a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to directly establish the other. *State v. McClure*, 504 S.W.2d 664, 668 (Mo.App.1974).

Concerning the theft of the Plymouth, we agree with defendant that the evidence of that theft did not have any legitimate tendency to directly establish defendant's guilt of the tampering charge of the 1970 Chevrolet. Our reasoning is the same as enumerated above in our discussion of the defendant's first contention.

Concerning the theft of the Buick, we believe the evidence of that theft was admissible because there was the requisite logical relevance between it and the crime charged.

Both the Chevrolet with which the defendant is accused of tampering and the Buick were stolen the same day. Both stolen autos, the Buick and the Chevrolet, were found at Sanders' house the same day.

According to Sanders, he, the defendant and Jumper took parts off of both autos the day of the thefts. There was also evidence that the Buick auto contained a child's car seat and that the defendant gave a child's car seat to Sanders' wife the day of the thefts.[1]

█ We believe the evidence concerning the theft of the Buick is admissible to prove the Chevrolet tampering charge, because it tends to establish a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the other. *State v. Reese*, supra, 307. The trial court correctly admitted this evidence.

█ Defendant next contends it was error for the court to give instruction No. 5A (MAI–CR 2.10).[2] We disagree. It was proper to give this instruction. There was evidentiary support for the instruction.

█ Defendant also contends that the prosecutor during voir dire improperly attempted to have the jurors commit themselves to a guilty verdict. We need not decide this contention because we believe the form of the question will not be repeated on retrial.

Because we believe the rebuttal evidence concerning the theft of the Plymouth was improperly admitted and was prejudicial to defendant, we reverse the conviction and remand the cause for retrial.

The judgment is reversed and the cause remanded for a new trial.

WEIER, P. J., and RENDLEN, J., concur.

---

1. Sanders' employment records were introduced to show that he was working the day the Chevrolet and Buick were stolen. This was obviously done to narrow the thefts to the defendant and Jumper.

2. "INSTRUCTION 5A
MAI CR 2.10
"All persons are guilty who knowingly act together with the common purpose of committing an offense, or who, whether present or not, knowingly and intentionally aid or encourage another in committing it, and whatever one does in furtherance of the offense is the act of each of them.

"The presence of a person at or near the scene of an offense at the time it was committed is alone not sufficient to make him responsible therefor, although his presence may be considered together with all of the evidence in determining his guilt or innocence."