**STATE of Missouri, Respondent,**

v.

**Carl W. DENNY, Appellant.**

**No. 12045.**

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 3, 1981.

John D. Ashcroft, Atty. Gen., Rosalynn Van Heest, Asst. Atty. Gen., Jefferson City, for respondent.

W. Joseph Adams, Branson, for appellant.

PER CURIAM:

Defendant Carl W. Denny was charged as a persistent offender (§ 558.016–2)[1] with having committed the class A felony of first degree robbery (§ 569.020) in Taney County on February 16, 1980. The jury found defendant guilty and assessed punishment at imprisonment for a term of thirty years. § 558.011–1(1). Albeit the court found defendant to be a persistent offender, it imposed a sentence in accordance with the jury's verdict but specified it was to "run consecutively with the sentence for first degree robbery in Greene County in its Case No. CR580–62–FX–2." Defendant appealed.

The facts regarding the robbery were not in dispute at trial and their sufficiency to sustain the conviction is not here questioned. Therefore, a brief summary of the evidence will suffice. Near 12:15 a.m. on February 16, 1980, three men (later identified as the defendant, his brother and Gerald Johnson) entered the Branson Inn at Branson, Missouri, armed with handguns. With defendant apparently taking the lead, they demanded money from the night auditor at gunpoint. The trio also took money from the cash drawer and a desk, money and a wristwatch from the auditor and a bearskin rug from one of the offices. Defendant then knocked the auditor to the floor by hitting him with a gun. After the robbers departed, the auditor notified the police who notified other authorities in the area regarding the crime with a description of the perpetrators and the property stolen.

Inter alia, police at Harrison, Arkansas, were notified of the foregoing. About 2:30 a.m. the same day of the robbery, a policeman saw three men, fitting the broadcast description of the robbers, emerge from a Harrison motel and enter a taxi which took

1. Statutory references are to RSMo 1978. Rule references are to Missouri Rules of Court, V.A. M.R.

them to an airport. Defendant and his two companions were arrested. Searches of the three at the place of arrest, the taxi and later warrant searches of the suspects' automobile and motel room, resulted in the recovery of the stolen monies, the bearskin rug and the weapons employed in the robbery.

Defendant's first point relied on in this appeal states: "The court erred in overruling appellant's motion for continuance of trial of this action in which appellant stated to the court he did not trust his appointed attorney and wanted another attorney appointed to represent him. That the court erred in requiring appellant to go to trial without assistance of counsel, which was manifest injustice and miscarriage of justice."

The point has this background. Counsel was appointed for defendant April 27, 1980, or in excess of five months before the trial date of October 8, 1980. On the latter date after the prospective jurors had been assembled, and admittedly for the first time, defendant asked "that my attorney withdraw from the case" and requested "the state to appoint me another counsel." However, at another time during a protracted discussion of the matter, defendant told the court "I ask that I be granted permission to retain my own attorney" and call his parents and ask "them to help me out" with no assurances that the parents would or could accede.

When asked his reasons for the belated request, defendant said: "Due to the conversations I've had with other attorneys involved in the string of cases I've got down there, which I'm sure [the Court is] aware of, the other two counts I've had in the other two counties, and the conversations I've had with [my attorney] here, I just don't feel he's got my best interests at heart . . . ." Pressed for specifics, defendant said his lawyer counseled against filing a plea of mental disease or defect as a defense. Subsequently defendant admitted receiving an examination on such a plea in another case involving a crime committed only a few hours before the one in question

and he had been found competent. When the court asked defendant: "Are you asking for a mental exam at this time?" the defendant answered, "No."

The statement in the first point relied on, supra, that "the court erred in requiring appellant to go to trial without assistance of counsel" is not accurate. What the court did was that it refused to grant a continuance, refused to appoint other counsel, refused defendant time to retain an attorney of his own selection and insisted upon defendant proceeding to trial with appointed counsel who had represented him for over five months. The court meticulously outlined to defendant the complexities of a trial and his need for professional services. Nevertheless, defendant said he did not want his then lawyer "to assist me in my defense at all." Despite this, the court directed the attorney to remain and to aid or advise the defendant at any time the latter requested assistance.

■ Defendant's constitutional right to counsel is within the discretion of the court. *State v. Hamblin*, 448 S.W.2d 603, 607[7] (Mo. 1970); *State v. Rollie*, 585 S.W.2d 78, 85[7] (Mo.App.1979). The defendant's disagreement with advice given by the appointed lawyer did not alone entitle him to a change of counsel. *State v. Hollins*, 512 S.W.2d 835, 838[2] (Mo.App.1974). Likewise, without justification, a defendant may not arbitrarily discharge his attorney or refuse the attorney's services and thereafter be heard to complain that he had no proper representation. *Evans v. State*, 467 S.W.2d 920, 923 (Mo. 1971). To warrant substitution of lawyers, the defendant must first demonstrate justifiable dissatisfaction with appointed counsel. But more to the point in the present case, "[t]he right to effective assistance of counsel may not be improperly manipulated by an eleventh hour request to obstruct the orderly administration of justice." *United States v. Hart*, 557 F.2d 162, 163[1, 2] (8th Cir. 1977).

■ After careful and lengthy questioning of defendant and his appointed counsel, the trial court declared, and we believe properly so, the lawyer to be "competent"

and that nothing presented "indicates to me that he would not have your best interests at heart in representing you effectively and competently." As seen, each tenuous reason advanced by defendant for having his appointed lawyer withdraw from or be relieved in the case, was forsaken when the fallacy of each advanced reason became self-evident. The substitute given for each abandonment proved no better than the first, leaving only a "feeling," which expresses an absence of any reasoning, that the appointed attorney has not "got my best interests at heart." Defendant's right to secure counsel who he feels has "got my best interests at heart" is restricted "to the extent that it impinges on the public's right to effective and efficient administration of justice, and the rights of other defendants in criminal cases to have their cases tried." *State v. Jefferies*, 504 S.W.2d 6, 7[2] (Mo. 1974). Defendant's "eleventh hour" maneuver herein to forestall his trial may be appropriately cited as an improper manipulative undertaking "to obstruct the orderly administration of justice." *United States v. Hart*, supra, 557 F.2d at 163. Defendant's first point relied on is denied.

In their entirety, defendant's second point relied on and the argument portion of his brief in relation thereto, read: "The court erred in overruling appellant's motion to suppress any and all evidence obtained from appellant on or about February 16, 1980 as the search and seizure were made without warrant and without other lawful authority. The testimony of officer Redding stated that the appellant was put into custody and searched and that the officer knew that the appellant had large sums of money on him long before any warrant for search was obtained by officer Redding in violation of Section 542.296 R.S.Mo. 1969."

As written, there can be no doubt that the second point relied on, which consists of the first sentence above quoted, violates the mandatory requirements of Rule 30.06(d) in that it fails to state "wherein and why" a warrant was required or to explain what "other lawful authority" the search and seizure was made without.

Although no duty is owed to resort to the argument portion of the brief to come by "wherein and why" it is claimed the trial court erred, the entire argument devoted to this point, consisting of the second sentence above quoted, is no more illuminating than the point itself. Nonetheless, we forgive the transgression. Rule 30.09. To dispose of this point upon its merits, if any, we make the following observations. It is immaterial that the motion to suppress may have been improperly overruled, and we do not say that it was, when the evidence, as here, was subsequently received without a single objection. *State v. Davis*, 547 S.W.2d 482, 487[7] (Mo.App.1976). There being no claim the arrest was invalid, it suffices to say the officer, without a warrant and being informed that defendant was armed only a short time before, had the right to search defendant and the area in which he could reach a weapon or destroy evidence. *State v. Worthon*, 585 S.W.2d 143, 147[2] (Mo.App.1979); *State v. Dayton*, 535 S.W.2d 479, 484[1] (Mo.App.1976). The second point relied on is denied.

The four remaining points relied on in defendant's brief are hereinafter set forth, in haec verba, with the verbatim argument thereto, if any, following in brackets. "III The court erred in overruling appellant's motion to suppress the testimony of Robert J. Reynolds, for the reason that the conduct of the investigation procedures at pretrial stages were so suggestive and conducive to irreparable mistaken identification of appellant. [The testimony of Mr. Reynolds at page 92 of the transcript says that when he went into a room at the Harrison, Arkansas police station there were on a desk two guns and a drivers [sic] license. The drivers [sic] license was that of the appellant. There were not any other objects on the desk but two guns and one drivers [sic] license. Most suggestive to Mr. Reynolds that the one who committed the crime was the person whose drivers [sic] license was on the desk with two guns.]. IV The court erred in overruling appellant's motion to dismiss the information based upon the failure of the state to comply with Supreme Court Rule 23.03. The preliminary exami-

nation was held on March 19, 1980 and the information was not filed until April 7, 1980 with no good cause shown by the State for the delay. The court further erred in overruling appellant's motion for discharge because the State failed to have appellant arraigned within 40 days of the preliminary hearing. [All void and in conflict with Supreme Court Rules 23.02 and 22.07(d). The State was in total disregard of the rules of court with no good cause shown for their action and the court was in total disregard of the rights of appellant.]. V The court erred in overruling appellant's motion for mental examination to determine his capacity to understand the proceedings against him or assist in his defense. VI The court erred in allowing attorney for appellant to withdraw at end of trial and appointing new counsel to appellant to handle after trial motions, in which newly appointed counsel could not be aware of trial proceedings and any error affecting appellant. This action was manifest injustice and miscarriage of justice. [The court erred in allowing attorney for appellant to withdraw at end of trial and by requiring new counsel to assist appellant in his after trial motions. In no way can an attorney appointed after trial without benefit of transcript be aware to the possible error at trial and to preserve for any defendant all the areas of error and injustice imposed upon a defendant at trial. Thereby limiting the right of scope of appeal for said appellant to those areas that an unskilled and untrained person can attempt to communicate to his newly appointed counsel. To require this is a manifest injustice and a miscarriage of justice.]."

A most cursory perusal of the last four points relied on, supra, makes it patent that the obligatory mandates of Rule 30.06(d) have not been met. In addition, and as required by the rule, none of the points are accompanied by a single case citation of authority. No point consists of a matter of first impression, a matter of logic or policy or analysis of statutory or documentary language which might serve to excuse the lack of authority citation. *Thummel v. King*, 570 S.W.2d 679, 687[13] (Mo. banc 1978). Nevertheless as it is our task to decide cases

upon their merits whenever possible, we shall consider points III to VI on that basis.

■ As to point III. Robert Reynolds was the auditor on duty at the Branson Inn at the time of the crime charged. At the hearing on the motion to suppress his identification testimony, Reynolds recounted that the lighting at the inn when the robbery was committed was excellent and that he had an uninterrupted very close view of the defendant for five to seven minutes. After being struck on the head, the defendant put his arm around Reynolds saying "we was going to walk out of [the motel] like we're buddies." No one can seriously doubt that because of the situation Reynolds' attention was high and that he possessed and exercised the opportunity during the commission of the crime to see and remember the defendant. Within hours after the robbery and after the trio's arrest, Reynolds was taken to the Harrison, Arkansas police station. Upon entering the station and without a suggestion by anyone, Reynolds saw two guns and three (not one as the point states) drivers' licenses on a desk. After glancing at these objects, Reynolds spontaneously and without hesitation indicated the picture on defendant's license and exclaimed, "There's the man that hit me over the head there."

■ We perceive no error in the court's overruling the motion to suppress. But assuming arguendo the court erred, we find no want of due process in the court's ruling on the identification testimony. " '. . . Reliability, not suggestiveness, "is the linchpin in determining the admissibility of identification testimony * * * " * * * and reliability of the in-court identification testimony is to be assessed under the "totality of the circumstances." * * * Factors to be considered include: (1) The opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confron-

tation.' *State v. Higgins*, 592 S.W.2d 151, 160[13, 14] (Mo. banc 1979)." *State v. Holt*, 603 S.W.2d 698, 702[6, 7] (Mo.App.1980). The witness' in-court identification of defendant was predicated on all the above factors. But all the foregoing be what it may, at trial defendant did not object to Reynolds' identification testimony and for that reason alone the alleged error was not preserved for our review. *State v. Yowell*, 513 S.W.2d 397, 402[2] (Mo. banc 1974). Defendant's third point relied on is denied.

■ As to point IV. Following the preliminary hearing on March 24, 1980, the following docket entry was made. "... and said defendant is bound over to stand trial in Division I of the Cir. Ct. of Taney County Mo. First appearance to be April 4, 1980." We note that from March 25 to April 4, 1980, inclusive, is 11 days. Rule 22.07(d): "If the defendant is held to answer to the charge the judge shall order the defendant to appear in the court having jurisdiction of the offense on a day certain as soon as practicable but not more than forty days after completion of the preliminary examination." As above noted, the court which conducted the preliminary hearing ordered defendant to appear in the Taney County Circuit Court (the court having jurisdiction of the offense) on April 4, 1980, or 11 days thereafter, which was well within the 40-day limitation provided in Rule 22.07(d). The 40-day limitation stated in this rule refers only to defendant's appearance in the circuit court—it does not undertake to set a time within which an actual circuit court arraignment must take place.

■ Rule 23.03: "An information charging a felony shall be filed not later than ten days after the date of the order requiring the defendant to answer to the charge. The court having jurisdiction of the offense may extend the time for good cause shown." The information in this case was filed April 7, 1980, or on the 14th day after the March 24, 1980, order binding defendant to trial, supra. The fact the circuit court overruled defendant's motion to dismiss the information because it was not filed within the time specified in Rule 23.03, would indicate "good cause" was shown for the tardy filing. In any event, defendant has never claimed that any prejudice resulted from the four-day delay or that the delay worked to deprive the court of jurisdiction, which it did not. Cf. *State v. Eaton*, 504 S.W.2d 12, 19–20[14] (Mo. 1973). Defendant's fourth point relied on is denied.

The abstraction set forth in defendant's point relied on V, supra, shorn of any citation of authority, has been fully answered in the sixth paragraph of this opinion in our discussion of defendant's first point relied on. As already noted, when the court asked defendant, "Are you asking for a mental exam at this time?" the defendant's answer was "No." The fifth point is denied.

■ As to point VI. We have already noted under the first point relied on defendant's express dissatisfaction with his appointed counsel and his refusal to seek the assistance of that lawyer at any time during the trial although counsel, as directed by the court, remained at the trial ready to give any assistance which defendant might ask of him. After the verdict had been returned and the court was explaining to defendant the time and procedures involved in preparing a motion for a new trial, defendant stated he would "like to be appointed counsel for sure" for those purposes. The court complied and different counsel was appointed for defendant. He has prepared the motion for new trial, filed the notice of appeal and prepared and filed a written brief on behalf of defendant in this court. We can conceive of no incongruity greater than this defendant's complaint of the trial court's action which consisted of doing exactly as the defendant asked. Any error, and we see none, that was committed was invited by defendant himself and will not be corrected by granting a new trial. *State v. Byrne*, 595 S.W.2d 301, 307–308 (Mo.App.1979).

We have, as the above attests, considered each point relied on by defendant. As it is certain this court would receive no benefit from oral argument on the points advanced, the parties' requests for oral argument in

the cause are now denied and the matter is taken as submitted on the briefs. The judgment is affirmed.

All concur.