STATE of Missouri, Respondent,

v.

Ladon WRIGHT, Appellant.

No. 43686.

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 9, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 19, 1982.

Application to Transfer Denied
May 17, 1982.

William J. Shaw, Public Defender, Janet F. Catalona, Asst. Public Defender, Clayton, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George R. Westfall, Pros. Atty., Clayton, for respondent.

CRANDALL, Judge.

Appellant was convicted of burglary in the first degree, a Class B felony, § 569.160, RSMo 1978,[1] and stealing property over the value of $150 without consent, § 570.030, a Class C felony. The trial court found that appellant was a persistent offender subject to extended terms under § 558.016 (RSMo Supp.1980). Appellant's timely motion for new trial was overruled, allocation was granted, and defendant was sentenced to fourteen years on the burglary count and a consecutive term of ten years on the stealing count. We affirm.

Appellant does not challenge the sufficiency of the evidence; therefore, we will briefly review the facts.

On April 23, 1980, at approximately 5 a. m., Nancy Kollmar, who resided at her home in St. Louis County with her husband and family, was awakened by a noise in the laundry-sewing room adjoining her bedroom. She next heard a noise in the kitchen and thought it was her daughter. Then she heard someone come into her bedroom and take something off her husband's dresser. She looked and saw a black man who appeared to have an Afro hair style and was wearing a red shirt with white lines down the side. She screamed and the intruder fled. Her scream awoke her husband who pursued the intruder without success while Mrs. Kollmar called the police.

A police officer received a broadcast at 5:09 a. m. that a burglary had just occurred at the Kollmar home and a Negro male wearing a red top, last seen running west from the Kollmar address, was the suspect.

---

1. All statutory references are to RSMo 1978 unless otherwise indicated.

No more than thirty seconds later the officer spotted appellant around the corner from the Kollmar residence. He noted that the subject was a black man who was wearing a red jogging suit. He further observed that appellant was sweating heavily and carrying a small white jewelry-type box. Appellant did not have an Afro hair style.

Appellant was arrested and questioned by the police officer. He stated that his name was Ronald Jones, that he was going to catch a bus to go to work, and that he didn't get the jewelry box from any house.

Various items, including the jewelry box, were taken from the appellant and later identified as having been taken from the Kollmar home at the time of the burglary. Appellant was returned to the crime scene within ten to fifteen minutes after the police had received the call. Mrs. Kollmar viewed the appellant but, noting that he did not have an Afro hair style, was unable to identify him as the intruder in her home that morning.

Appellant's first contention is that the trial court erred in not granting a continuance for two hours to permit him to get his personal clothing before proceeding to trial. The trial court denied the request for a continuance and proceeded to trial while the appellant was clothed in a bright orange jumpsuit. Appellant wore this jumpsuit during part of the voir dire examination. During the remainder of the trial he was dressed in his personal clothing. The trial court noted the time of the request for a continuance (10:35 a. m. September 29, 1980) and further noted that the case had been assigned to his division for trial ten days prior to that date and that he was going to proceed with the trial.

■ Appellant correctly states that an accused cannot be compelled to stand trial before a jury while dressed in identifiable prison clothes. *Estelle v. Williams*, 425 U.S. 501, 513, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126 (1976). In this case defendant was not compelled to stand trial in prison clothes. He had been given ten days' advance notice of his trial date and had not obtained his personal clothing. The trial judge did not compel him to stand trial in prison clothes. He compelled him to stand trial.

■ Appellant was dressed in a bright orange jumpsuit. There is no indication in the record of any further markings that would identify the clothes as prison garb and therefore identify appellant as a prisoner. *State v. Martin*, 624 S.W.2d 879, at 881 (Mo.App.1981); *State v. Beal*, 602 S.W.2d 22, 24–25 (Mo.App.1980). Appellant's trial counsel, however, removed any uncertainty in the jury's mind as to appellant's status during her closing argument when she said to the jury:

"Well, I know your're intelligent people and you saw how Ladon [appellant] was dressed the first day you saw him. *And it was no secret that he has been in custody.* He is a poor person with a public defender awaiting for his day in court to have this issue decided." (Emphasis added.)

■ For appellant to inform the jury that he is a confined prisoner and then complain that the jury knows that he is a confined prisoner is a *non sequitur*. A defendant is not entitled to complain about matters brought into the case by his own statements or take advantage of an error of his own making. *State v. Miller*, 593 S.W.2d 898, 899 (Mo.App.1980). The trial court did not abuse its discretion in proceeding to trial. Appellant's first contention is without merit.

■ Appellant's second contention is that the trial court erred in not suppressing Mrs. Kollmar's pretrial identification of appellant.[2] This point is not preserved for review because appellant failed to object to the introduction of the evidence at trial. *State v. Denny*, 619 S.W.2d 931, 936 (Mo.App.1981); *State v. Yowell*, 513 S.W.2d 397, 402 (Mo.banc 1974). Our review is limited to plain errors that result in a manifest

---

2. We note that there never was an identification made during the "show-up." She initially stated that appellant was not the man and later stated that "[i]t could be him."

injustice or a miscarriage of justice. Rule 29.11(d); *State v. McCrary*, 621 S.W.2d 266, 272 (Mo.banc 1981). We have carefully reviewed the alleged error and find it to be without merit.

Appellant next contends that the trial court erred in permitting a police officer to testify that appellant said his name was "Ronald Jones" when he was arrested. Appellant argues that the use of an "alias" was irrelevant to the issues and tended to suggest that he had a prior criminal record. We disagree.

█ The term "alias" was never used in the evidence nor was there any evidence that appellant used the name "Ronald Jones" other than on this one occasion. The use of a false name immediately after being arrested and accused of a crime was relevant to show defendant's consciousness of guilt. *State v. Russ*, 599 S.W.2d 103, 104 (Mo.App.1980).

Appellant's final contention is that there was error in refusing to admit a posed photograph into evidence.

Mrs. Kollmar had initially told the police that the suspect had an Afro hair style. Immediately following appellant's arrest, the police asked her if she could identify him as the burglar. She replied, "[N]o, he doesn't have an Afro." Moments later she stated that "it could be him."

The State had attempted to introduce a posed photograph into evidence for the purpose of illustrating how a Chinese wok[3] that was hanging on a wall behind appellant when he was first spotted could have created the illusion of an Afro hair style. The proffered photograph was of a person standing approximately in the position of appellant when he was first encountered by Mrs. Kollmar. Upon appellant's objection, the court found that it was "a posed photograph and . . . that the prejudicial effect of it outweighs the beneficial effect."

The defense later attempted to introduce a similar photograph into evidence. Upon objection, the court ruled that as appellant's photograph was also staged, he would apply the same ruling to it as he had to the State's photograph.

█ Photographs of the scene of an alleged crime are admissible if they depict the conditions and circumstances surrounding the alleged crime and aid the jury in throwing light on a material issue in the case. *State v. Lee*, 549 S.W.2d 934, 939 (Mo.App. 1977). However, trial courts have a wide discretion in determining the admissibility of photographs. *State v. Jackson*, 499 S.W.2d 467, 472 (Mo.1973).

In *State v. Craig*, 406 S.W.2d 618 (Mo. 1966), the appellant complained of the exclusion of a photograph of the front door of a store that he was accused of burglarizing. He wished to use it to impeach the testimony of a witness by showing that her view was obstructed by an automobile. The trial court ruled it inadmissible because it was taken in the daytime while the incident occurred at night and because it was taken from the porch of the witness' house rather than from the window from which the witness had testified that she had made her observations. The Missouri Supreme Court found no abuse of discretion in refusing admission of the photograph.

█ Here we are dealing with posed photographs purporting to recreate the image seen by the witness as she was startled from her sleep at 5 a. m. This type of photograph, as opposed to mere crime scene pictures, should be subjected to even greater scrutiny. We find no abuse of discretion in the trial court's evenhanded treatment of the photographs.

The judgment of the trial court is affirmed.

STEWART, P. J., and STEPHAN, J., concur.

---

3. A wok is a curved metal bowl which is used much like a skillet.