**STATE of Missouri, Plaintiff–Respondent,**

v.

**Richard BECK, Defendant–Appellant.**

**No. 55888.**

Missouri Court of Appeals, Eastern District, Division Two.

Feb. 6, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 7, 1990.

Application to Transfer Denied April 17, 1990.

Curtis C. Crawford, Alan G. Kimbrell, Rosecan & Kimbrell, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Stewart M. Freilich, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

CRANDALL, Judge.

Defendant, Richard Beck, appeals from his conviction of possession of more than 35 grams of marijuana, in violation of Section 195.020, RSMo (1986). He was sentenced as a prior and persistent offender to imprisonment for ten years. We reverse and remand for a new trial.

Defendant was first convicted in a previous trial for the same offense, but that conviction was reversed and the case was remanded for a new trial. *State v. Beck*, 745 S.W.2d 205 (Mo.App.1987) (*Beck I*). Defendant's second trial resulted in a hung jury. Defendant's third trial resulted in the conviction which is the subject of this appeal.

Defendant does not challenge the sufficiency of the evidence. Viewed in the light most favorable to the verdict, the evidence was that, on January 13, 1985, two police officers observed defendant commit a traffic violation when he pulled onto a sidewalk. There he picked up a woman, Mrs. Frances Klocke. The officers pursued defendant for approximately seven blocks until he stopped his car in a convenience store lot. He claims that he did not commit a traffic violation and that he did not know the police car was following him.

One of the police officers approached the driver's side of defendant's car. He called to his partner that the passenger, Mrs. Klocke, was attempting to swallow something. As the officer was extracting defendant from the vehicle, he observed two bags of marijuana partially hidden under the front seat of defendant's car and an open briefcase containing bags of marijuana in plain view on the back seat. A search of defendant's person revealed a box containing a pipe and a small amount of marijuana. Meanwhile, the other police officer ran to the passenger side of the automobile and saw Mrs. Klocke throwing things which looked like pills into her mouth.

Defendant testified at trial. His defense was that the police officers had planted the marijuana in his car. In support of this contention, defendant and Mrs. Klocke both testified that, after they were taken from the car and handcuffed, one of the officers removed the briefcase from the trunk of the police car and took it to defendant's automobile. Two independent witnesses at the scene of the arrest corroborated this testimony.

We address defendant's points of error not in the order raised on appeal. We first consider defendant's claim that the trial court erred in permitting the State to impeach his testimony proffered in the present trial with testimony given in a prior trial. He argues that introduction of the prior testimony into evidence constituted improper impeachment on a collateral issue.

On cross-examination, the prosecutor questioned defendant as follows:

Q. ... [Y]ou stated that you got a copy of the police report, is that right?

A. No, sir.

Q. Did you get a copy of the police report?

A. An attorney told me what the police report said over the telephone. He said that it ... hadn't been released yet. It was only a day or two after the incident when I went down to the police station then.

\* \* \* \* \* \*

Q. Mr. Beck, you testified that you knew what was in the police report either the next day or the following day. I asked you did you not, on a prior occasion, state that you had the police report the next day?

A. I think at the last trial I might have said that I read the police report. I mean, we could clear it up by reading it, you know, but I know I was told over the phone....

Q. The question is did you have a copy of the police report the next day?

A. No, sir. No, sir.

Q. But you did testify on a prior occasion that you did, did you?

A. No, I don't believe I did....

The prosecutor then proceeded to question defendant extensively about the discrepancy between his testimony in the instant trial and his testimony in the former trial regarding the manner in which he had learned of the contents of the police report. In rebuttal, over objection, the State was permitted to introduce into evidence testimony by defendant from the second trial, which had ended in a hung jury. In that testimony defendant stated, *inter alia,* that "somebody got a copy of the police report for me." This prior testimony impeached defendant's testimony in the present case that he had not received a copy of the police report.

■ The well-established rule in Missouri is that, when a cross-examiner questions a witness about specific acts collateral to the issues in dispute, he is bound by the answer of the witness and cannot offer contrary evidence (except for a criminal conviction, Section 491.050, RSMo (1986)).

*State v. Diamond,* 532 S.W.2d 873, 875 (Mo.App.1976). The test of whether the matter is collateral for purposes of testimonial impeachment is whether or not the party seeking to introduce it would be entitled to prove it as part of his case. If a fact may be shown in evidence for any purpose independent of contradiction, it is not collateral. *Overfield v. Sharp,* 668 S.W.2d 220, 223 (Mo.App.1984).

■ State admits that the issue of the police report "may have been" collateral, but asserts that any error permitting the State to read defendant's testimony from a former trial was harmless. Error in the admission of evidence may not be declared harmless unless it is so without question and beyond a reasonable doubt. *Beck I,* 745 S.W.2d at 209.

■ Here, the sole purpose of the prosecutor's rebuttal evidence was to contradict and to discredit defendant on a fact which was not material to the case at hand. *See State v. Dennison,* 428 S.W.2d 573, 579 (Mo.1968). The collateral evidence interjected by the prosecutor attacked defendant's credibility. When collateral evidence impugns defendant's veracity, its admission will always be prejudicial to defendant. The trial court committed reversible error in permitting the prosecutor to impeach defendant's credibility on a collateral issue. Defendant's point is granted.

We next consider defendant's contention that the trial court erred in admitting evidence regarding Mrs. Klocke's swallowing a "potent drug." The challenged testimony was elicited during the prosecutor's direct examination of one of the arresting officers:

Q. What happened when he pulled on to the 7–Eleven lot?

A. He pulled into the lot. We pulled in directly behind him and my partner, Dan, said to me, "She's eating something, she is throwing something in her mouth." At that point I was the passenger in the police vehicle, so I got out and ran to the passenger side of Mr. Beck's car, my partner went to the driver's side.

\* \* \* \* \* \*

Q. What did you do upon being advised of that?

A. I exited the vehicle, ran up to the passenger side of the car where I seen Frances [Mrs. Klocke] throwing items into her mouth, like little pills.

Q. Okay.

[Defense Counsel]: If your Honor please, I'm going to object to that. May we approach the bench? I ask that it be stricken from the record, that the jury be advised to disregard that comment.

[Prosecutor]: May we approach the bench?

(Counsel approached the bench and the following proceedings were had:)

[Prosecutor]: State's position, if you read that opinion [*Beck I*, 745 S.W.2d at 208] they didn't say that we couldn't show that she was trying to swallow pills, they said we couldn't show what the pills were. We can state the actions that he observed insofar as what this passenger was doing. We just don't—

The Court: Now what this Officer said—

[Prosecutor]: What this Officer said is in perfect accordance with what the Court of Appeals held in their decision.

[Defense Counsel]: That's not what this Officer is saying. He testified to a pill and he can't testify as to what was going in anybody's mouth. If he is going to say a pill, it seems to me that it leaves the inference that it was something illegal, something improper about what the lady was doing, and for that reason I want that stricken from the record, the jury instructed to disregard it.

The Court: I'm—

[Defense Counsel]: And I request a mistrial.

The Court: I'm going to deny the request for a mistrial. I'm not going to order it stricken from the record. I think the officer can testify from what he saw. However, Mr. [Prosecutor], I think you ought to get away from this, it's not important in the case. What is important in this case is the defendant's case. You have already been told by the Court

of Appeals what she does is not pertinent to this case. I think you ought to let that go and concentrate on Mr. Beck's case here.

[Prosecutor]: Judge, we are because there has been prior testimony shown through this officer's testimony he did place her under arrest and what her actions were, because there has been testimony of other witnesses that she was raising a commotion. And that is part of the reason why the officers left the lot so soon, did not take the photographs, that's relevant for that.

[Defense Counsel]: My objection, your Honor, it is going to the use of the word "pill."

The Court: I'm overruling that objection, and I think it is proper because I think the officer testified to what he saw. However, if that's what he saw, fine, that's a fact that of course is subject to cross-examination and to further argument at a later time. I mean that's a fact for the jury to decide.

But again I think, Mr. [Prosecutor], it's not an area which you should get into any further, okay?

(The proceedings returned to open court.)

Q. [Prosecutor]: What action did you take after observing that?

A. *After observing that, I, believing the item possibly to be a potent drug —*

Q. Well, what did you do next, what action did you take?

A. I observed what I observed. I had told the subject to exit the car, I opened the door of the car and asked her to step out at which time she did. She was screaming and cursing.... (emphasis added).

Defendant claims that he was prejudiced by the introduction of evidence of Mrs. Klocke's use of a "potent drug" because it not only implied his guilt by association with Mrs. Klocke, a passenger in his vehicle, but it also impeached the testimony of Mrs. Klocke, a crucial defense witness.

■ Preliminarily, the State contends that defendant's claim of error is not preserved because at trial defense counsel ob-

jected only to evidence that Mrs. Klocke was throwing pills into her mouth and failed to specifically object to the officer's testimony that the pills were "possibly" a "potent drug." It is arguable that defendant's claim of error is preserved. To preserve error, *inter alia,* an objection must be so specific as to clearly advise the trial court of the ground or reason for excluding the evidence. *State v. Cannady,* 660 S.W.2d 33, 36 (Mo.App.1983). The purpose of an objection, very simply, is to timely and specifically call the trial court's attention to the reason why the admission of certain evidence would be erroneous.

■ In this case, when defense counsel objected to the testimony regarding the pills, he specifically pointed out that such testimony would lead to the inference by the jury that the pills were something illegal. The prosecutor, who also tried *Beck I,* acknowledged that it would be error to "show what the pills were." The trial court, being fully informed and cognizant of the potential for error, overruled defense counsel's objections, but specifically admonished the prosecutor not to go any further. After the proceedings returned to open court, the very next answer of the witness removed any doubt about the legality of the pills by inserting the term "potent drug."

Perhaps defense counsel should have further highlighted the testimony of the police officer for the jury, to the detriment of his client, by moving to strike the answer and by objection. It seems overly technical, however, to require defense counsel to repeat an objection with which opposing counsel and the trial court had agreed shortly before at the bench. Certainly, the trial court had been fully advised that any testimony regarding the content of the pills was error.[1]

■ In *Beck I,* this court reversed defendant's prior conviction on the same charge because the court had erred in admitting evidence that the pills Mrs. Klocke was swallowing were valium. This court cautioned that evidence of Mrs. Klocke's possession of valium had no purpose other than to attempt to convince the jury of defendant's guilt because of his association with her. *Beck I,* 745 S.W.2d at 208. This court stated, "The nature of the substance Mrs. Klocke possessed and whether her possession was legal or illegal was utterly irrelevant to the existence of an open briefcase containing 14 bags of marijuana in the back seat of dependant's automobile." *Id.*

Here, the testimony of the witness was an egregious violation of the unequivocal directive of *Beck I.* *Beck I* made it clear that evidence of defendant's passenger's possession of valium should not be admitted. Valium is a prescription drug which is capable of being used legally. Here, the objectionable evidence was that defendant's passenger was "possibly" using a "potent drug." The term "potent drug" covers a wide gamut and includes drugs which can never be possessed legally. Use of the phrase "potent drug" to describe the pills ingested by defendant's passenger was more onerous than describing the pills as valium.

Given the background of *Beck I* and the record in this case, it strains credulity to believe the testimony by the witness was an inadvertent, volunteered statement. Finding fault, however, for interjecting the offending testimony is not pertinent to this appeal. What is relevant is that defendant's right to a fair trial was prejudicially impaired by the erroneous admission of the evidence.

The admission of the police officer's answer about a "potent drug," which was mere speculation on his part, was a prejudicial transgression of defendant's fundamental right to be tried on the merits of his case and not to be found guilty by association. *See, e.g., Diamond,* 532 S.W.2d at 877. It was error for the trial court to admit such evidence. The error impacted so substantially on the rights of defendant "that manifest injustice or a miscarriage of justice will result if left uncorrected."

---

1. The error was arguably exacerbated when, later in the trial, the prosecutor asked Mrs. Klocke, "At the point [defendant's automobile] was being searched, were you in your own world still, in your own little world?"

*State v. Driscoll,* 711 S.W.2d 512, 515 (Mo. banc 1986), *cert. denied,* 479 U.S. 922, 107 S.Ct. 329, 93 L.Ed.2d 301 (1986). Therefore, even if the error was not preserved, the admission of the testimony rises to the level of plain error and mandates reversal. *See* Rule 30.20. Defendant's point is granted.

Defendant also contends that the trial court erred in admitting into evidence 11 posed photographs which were not taken contemporaneously with the arrest. The photos depicted defendant's automobile on the sidewalk, two bags of marijuana on the floorboard of the automobile, and a briefcase containing bags of marijuana on the back seat of the car. The photographs were introduced to corroborate the testimony of the two arresting police officers.

Photographs of the scene of an alleged crime are admissible if they depict the conditions and circumstances surrounding the alleged crime and aid the jury in throwing light on a material issue in the case. *State v. Wright,* 632 S.W.2d 296, 299 (Mo.App.1982). The trial court has broad discretion in determining the admissibility of photographs. *Id.* Posed photographs, however, as opposed to crime scene pictures, should be subjected to greater scrutiny by the trial court. *See Id.*

Here, the staged photographs purported to recreate what the police officers observed prior to and coincidental with defendant's arrest. In *Sheil v. T.G. & Y. Stores Co.,* 781 S.W.2d 778, 782 (Mo. banc 1989), a "slip and fall" case, the Supreme Court of Missouri upheld the admission of photographs of aisles in the store which had been taken on a later occasion and which showed objects in the aisles. The court stated, "It was clear that they were not contemporaneous photographs, and the jury was not misled on this." *Id.* Similarly, in this case, it was clear to the jury that the pictures had not been taken contemporaneously with defendant's arrest. We

have viewed the photographs and, although we question their value to the jury as an aid to understanding any material issue in the case, we hold that their admission into evidence was not reversible error. Defendant's point is denied.

Defendant also contends that the trial court erred in sustaining State's motion in limine to prohibit defense counsel from asking about the failure of the police officers to take fingerprints either from the bags of marijuana or from the briefcase. He argues that the inquiry concerning lack of fingerprint evidence was relevant to the issue of whether the police officers had brought the briefcase with them to the scene of the arrest.

The State is not required to gather fingerprint evidence, even if the lack thereof arguably could support defendant's contention that the police were attempting to frame him. *State v. Schneider,* 736 S.W.2d 392, 401 (Mo. banc 1987), *cert. denied,* 484 U.S. 1047, 108 S.Ct. 786, 98 L.Ed.2d 871 (1988); *State v. Simpson,* 611 S.W.2d 556, 560 (Mo.App.1981). The State is not obligated to take fingerprints from articles allegedly touched by a defendant; and it is not incumbent on the State to account for the absence of fingerprint evidence.[2] *Schneider,* 736 S.W.2d at 402. Also, in closing argument, an adverse inference may not be drawn from the State's failure to take fingerprints. *Id.* It was not error for the trial court to prohibit evidence regarding the failure to take fingerprints. Defendant's point is denied.

Defendant raises three other points on appeal. In view of our holding, we decline to address the remaining claims of error because they either are not likely to occur at retrial or were not properly preserved for appellate review. On retrial, the parties should consider the claims of error raised in the briefs in this appeal and should avoid, where appropriate, any repetition thereof.

---

**2.** We decline to follow *State v. Hall,* 687 S.W.2d 924 (Mo.App.1985) which held that it was error, albeit not prejudicial, that the trial court prohibited references to fingerprinting which could have been done but was not. In that case, the

court stated that defendant's fingerprints on cellophane bags containing marijuana were relevant to show her possession of the marijuana. *Id.* at 928.

The conviction is reversed and the case remanded for new trial.

PUDLOWSKI, P.J., concurs.

KAROHL, J., concurs in separate opinion.

KAROHL, Judge, concurring.

I concur with the holding that defendant, Richard Beck, is entitled to a new trial. I differ only in dicta saying admission of staged photographs, over objection, was not reversible error under the facts of this case.

The central contested fact in each trial of this case was whether arresting officers saw two packages containing marijuana in the automobile at the time defendant was arrested on traffic charges. The staged photographs support arresting officer's testimony that two bags of marijuana were visible. The defense was that the marijuana was planted by an arresting officer after defendant and his passenger were removed from the vehicle. Photographs of the scene of an alleged crime are admissible only if they depict the conditions and circumstances surrounding the crime which throw light on a material issue in the case. *State v. Wright,* 632 S.W.2d 296, 299 (Mo. App.1982). In the present case defendant was arrested in St. Louis on January 13, 1985 at 6:45 in the evening. The arrest took place in the dark. The photographic exhibits were taken in broad daylight. Shadows indicate the sun was nearly overhead. The lighting conditions could not have been the same at the time the photographs were taken when compared with the circumstances of arrest. Items visible in daylight are not necessarily visible at night. The difference may be important because what the arresting officer could see in the dark was a factor in determining his credibility. On retrial it may be reversible error to admit photographs which depict different conditions and circumstances.