STATE of Missouri, Respondent,

v.

Elmer CARR, Appellant.

No. 40409.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 26, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 17, 1980.

Application to Transfer Denied
Dec. 15, 1980.

Shaw, Howlett & Schwartz, James J. Knappenberger, Clayton, for appellant.

Joseph R. Aubuchon, Asst. Pros. Atty., Union, John Ashcraft, Atty. Gen., Paul Robert Otto, Robert Presson, Asst. Attys. Gen., Jefferson City, for respondent.

PUDLOWSKI, Judge.

Defendant, Elmer Carr, appeals a jury conviction of murder in the second degree, with a sentence of fifteen years imprisonment.

On January 31, 1976, Maurice Mense was a bartender at the Town and Country Club in Washington, Missouri. During the evening of that day two female patrons of the bar began to fight. The evidence shows that defendant and a companion, Peter Bauer, who had accompanied one of the fighting women to the bar, joined in the fight. Defendant Carr and Bauer knocked Mense to the floor, beat and kicked him. As a result Mense's leg was broken. He was immediately hospitalized and his leg placed in a cast. Mense was released from the hospital on February 11, but readmitted two days later. Mense's condition deteriorated and he died of a pulmonary embolism on February 26, 1976.

Defendant's first contention concerns the prosecution's failure to produce x–rays of Mense's broken leg. The x–rays were taken when he reentered the hospital and revealed a misalignment of the fracture. Defendant timely filed a motion to produce the x–rays. They were previously used by the prosecution and defense in the trial of defendant's companion, Peter Bauer. Unfortunately the x–rays could not be located at the time of the defendant's trial. Because of the missing evidence, defendant filed a motion to dismiss or in the alternative for a continuance under Rule 25.08(b).[1] The trial court denied the motions. The x–rays were subsequently found in the chambers of the judge who heard the previous trial. However, the discovery was too late to be utilized in defendant's trial.

Defendant claims the trial court erred in denying his motion to dismiss or for a continuance because the prosecution had suppressed the x–rays in violation of his right to due process as guaranteed by the fourteenth amendment to the United States Constitution. Defendant cites *Brady v.*

1. Present Rule 24.09 adopted June 13, 1979 and effective as of January 1, 1980 supersedes former Rule 25.08(b).

*Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to support his contention. *Brady* held that the prosecution violates due process by suppressing evidence favorable to and requested by an accused person where the evidence is material to either guilt or punishment.

The state argues that the facts of the instant case cannot support a claim under *Brady* because the x–rays had been misplaced by state officials not involved in prosecuting defendant Carr and because the x–rays were unavailable to both parties during the trial. *See U. S. v. Johnston,* 543 F.2d 55 (8th Cir. 1976).

▮ The state relies too heavily on the prosecution's lack of *actual* possession of or control over the evidence. It defies common sense to contend that the state may avoid its responsibility to produce requested material evidence under a shield of negligence.

> The deception from a negligent nondisclosure causes no less injury to the administration of criminal justice than a suppression made by design or guile. The duty to disclose whether under *Brady* or Rule 25.32, rests on the prosecution and if the material and information are within his possession or control, the cause of his failure cannot soften sanction.

*State v. Dayton,* 535 S.W.2d 469, 477 (Mo. App.1976). The fact that the prosecution could not locate physical evidence entrusted to it does not relieve it of its responsibility. If the prosecution loses or in some way deprives the defense the use of an item of material evidence entrusted to it, a new trial will be ordered "irrespective of the good or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83 at 87, 83 S.Ct. 1194 at 1197, 10 L.Ed.2d 215.

We emphasize that the evidence must be material and that there must be established that the state was responsible for the evidence's safekeeping. In the present circumstances the prosecution took possession and

signed for x–rays when defendant's accomplice, Peter Bauer, was tried. At the end of the prosecution of Peter Bauer the trial court admonished both parties that they were responsible for regaining possession of all exhibits. The state cannot now ignore that admonishment by contending that it could not produce this evidence because it lacked possession or control.

 The vital point which remains is whether the evidence which was not produced was material to defendant's guilt or innocence. Essentially, the question is whether the failure to produce the evidence resulted in a fundamental unfairness to the defendant. *State v. Moten*, 542 S.W.2d 317, 320 (Mo.App.1976); *State v. Buckner*, 526 S.W.2d 387, 393 (Mo.App.1975). Upon the failure or inability of the prosecution to produce evidence, the imposition of a sanction is within the sound discretion of the trial court. Rule 25.16; *State v. Davis*, 572 S.W.2d 243, 248 (Mo.App.1978). An abuse of discretion occurs only where the trial court fails to impose a sanction when the nonproduced information was of such a character that a reasonable likelihood existed that it would have affected the outcome of the trial. *State v. Davis*, 572 S.W.2d at 249. In the instant case no such abuse occurred because the x–rays were not material to either defendant's guilt or punishment. They would only have shown that the fracture was misaligned upon the victim's readmittance to the hospital. This fact was independently established by undisputed medical testimony. Therefore it cannot be said that the trial court abused its discretion in denying defendant's motion.

 The defendant, in the alternative, argues that the court erred by not granting a continuance to give the defendant time enough to locate the evidence. In the pretrial hearing the prosecution and defense offered evidence demonstrating their individual diligence in attempting to locate the x–rays. The testimony convinced the trial court that the x–rays were actually misplaced and undiscoverable. Since there was no testimony that there was a reasonable probability that the x–rays would be located within the foreseeable future the trial court did not abuse its discretion by denying defendant's motion for a continuance. *State v. Johnson*, 539 S.W.2d 493, 505–506 (Mo.App.1976).

 The defendant's second contention is that the court erred in admitting two out of court statements of the victim under the dying declaration exception to the hearsay rule. One of the statements was made to a Mr. Welscher on the day before the victim's death. The second statement was made to a police officer, Captain Malone, some twenty–five days before the victim's demise. To be admissible a dying declaration must be uttered while the declarant believes death is imminent and all hope of recovery is abandoned. That resolution is made in the first instance by the trial judge and then by the jury under the proper instructions. *State v. Custer*, 80 S.W.2d 176, 181 (Mo.1935). The court must delve into the declarant's subjective perceptions to determine whether he spoke under a fear of impending death. *State v. Woodward*, 499 S.W.2d 553, 557 (Mo.App.1973), *State v. Favell*, 536 S.W. 47, 50 (Mo.App.1976). It is the impression of almost immediate death and not the rapid succession of death which renders a declaration admissible. *State v. Proctor*, 269 S.W.2d 624, 627 (Mo.1954). The best method of proving the declarant's state of mind is his express statements. However, if the express statements are vague, subject to differing interpretation or unreasonable in light of the circumstances, the declarant's belief in imminent death may be inferred from his condition and any other circumstances which indicate his apprehension of imminent death. *State v. Proctor*, 269 S.W.2d at 627.

 On February 25, 1976, the eve of his death, the victim told Mr. Welscher, a friend of long standing, that he felt he was going to die, that he was not going to leave the hospital and that the defendant was responsible for breaking his leg. The victim's health had been declining since his readmittance to the hospital on February 13th. The statement that he wasn't going

to leave the hospital indicates his state of hopelessness. His unequivocal statement that he was going to die indicates his belief in imminent death. We conclude that at the time when the declarant made his statement to Mr. Welscher he was in fear of imminent death and as such the statement was admissible as a dying declaration.

■ The statement made to Captain Malone approximately twenty–five days prior to the victim's death should not have been admitted. An examination of the surrounding circumstances does not clearly indicate hopelessness and fear of imminent death. The admission of this hearsay statement, however, was harmless error since the jury heard substantially the same testimony from Mr. Welscher. *State v. Brandt,* 467 S.W.2d 948, 953 (Mo.1971).

■ The defendant's third point on appeal concerns a conversation between a spectator and a juror. During a recess on the second day of trial a spectator approached a juror and the two conversed in the hallway. Upon discovering this encounter the spectator and the juror were questioned by the court about the subject matter of their conversation. Both parties stated that they did not discuss the facts of the case. The defendant argues that in spite of the examination by the court, a mistrial should have been granted because the conversation might have been prejudicial to the defendant. Private communication between jurors and spectators is forbidden and will invalidate a verdict unless its harmlessness is demonstrated. *State v. Hunt,* 570 S.W.2d 777, 782 (Mo.App.1978). Because the trial court is in a better position to determine the intent of the parties it has broad discretion in determining whether the conversation prejudiced defendant. *State v. Eaton,* 504 S.W.2d 12, 22 (Mo.1973), *State v. Miles,* 364 S.W.2d 532, 536 (Mo. 1963). The evidence clearly indicated the spectator was innocently attempting to

identify the juror as a previous acquaintance and both parties denied talking about the merits of the trial. We conclude the trial court did not abuse its discretion in finding the conversation harmless.

The defendant finally contends that the court erred in submitting instruction No. 5 to the jury because it charges felony murder second degree and that the information charges murder second degree. We direct the appellant's attention to MAI–CR 6.06[1] and the following notes on use.[2] There is no difference between those instructions and the instructions offered by the trial court. We find the defendant's appeal without merit.

Affirmed.

GUNN, P. J., and STEPHAN, J., concur.

---

1. For homicides occurring after April 12, 1978, *see* MAI–Cr 2d 15.14.

2. "2. As to paragraph second, it is possible that death occurred where the defendant intended only to do serious bodily harm and did not intend to kill. The offense would nevertheless be conventional second degree murder.

Since an intent to do serious bodily harm will always be present where there is an intent to kill, if there is any question as to which intent existed the better course would be to submit only the intent to do serious bodily harm." MAI–Cr 6.06. Note 2.