**STATE of Missouri, Respondent,**

v.

**James Wright PERKINS, Appellant.**

**No. 50009.**

Missouri Court of Appeals,
Eastern District,
Division Three.

April 8, 1986.

Motion for Rehearing and/or Transfer
Denied May 6, 1986.

Application to Transfer Denied
June 17, 1986.

William L. Webster, Atty. Gen., Paul La-Rose, Asst. Atty. Gen., Jefferson City, for respondent.

Kathryn Shubik, St. Louis, for appellant.

SIMON, Judge.

Defendant, James Wright Perkins, appeals from a conviction of assault in the first degree in violation of Section 565.050 RSMo Supp.1984. Following the jury's verdict in the Circuit Court of the City of St. Louis, the defendant was sentenced, as a prior offender pursuant to Section 558.-016 RSMo Supp. 1984, to twenty-five years in the Missouri Department of Corrections and Human Resources.

On appeal, defendant contends the trial court erred: (1) in failing to grant a continuance or mistrial due to the state's failure to timely disclose a potentially exculpatory statement; (2) in allowing testimony by the victim's wife which improperly bolstered the victim's credibility; and (3) in sustaining the state's objections to valid voir dire examination by defendant. We reverse and remand for a new trial because of the error alleged in defendant's first point. Although we find no error in the second and third points, we will discuss these points because the issues may arise on retrial.

Since the defendant does not challenge the sufficiency of the evidence, we give only a brief summary of the facts; other pertinent facts will be included with our discussion of defendant's points on appeal. On August 29, 1984, Harold White was shot in his right shoulder while he was at a place near 3919 St. Ferdinand Street in the City of St. Louis. At the time of the shooting, White was to testify in the trials of Demetrius Trice and Darryl Boyd for murder. It was established that White frequently acted as an informant for the police. Here, White testified he had seen defendant with Trice on a number of occasions. White stated that defendant and a person called "Baby Brother" came to White's house at about 9:00 p.m. on the night of the shooting and defendant stated he needed White to pick up a package at a place where defendant could not go. White

felt funny about this, but he decided to go with the two men. He had known the defendant for about a year and had seen him every day for the past several days. He told his wife that he was leaving with James Perkins (defendant) and Baby Brother, and the three men rode away in a car. Defendant and White got out of the car at Warne and St. Ferdinand, and the two men walked for a distance. When defendant reached inside an attache case for a gun, White ran. Defendant fired four shots from a .44 magnum pistol, one of which hit White and knocked him partially through the window of a house. White further testified that defendant walked over to where White was laying, and stated, "Demetrius is going to love this," and then walked away. After Harold White's testimony, his wife, Marsha White, gave testimony corroborating the circumstances prior to her husband's leaving the house on the night he was shot.

Defendant did not testify but his evidence attempted to show that he was visiting a prisoner at the medium security institution on the night of the shooting and that he talked to an officer there for approximately fifteen minutes beginning at about 9:00 p.m. However, the institution's records and the testimony of two officers who worked at the institution did not clearly establish the exact date of his visit. A visiting card was introduced into evidence which included defendant's name on a list of persons who visited Raymond Brooks who was confined in the "H" dorm at the institution from August 28, 1984 through September 11, 1984. The entry showing the date when defendant visited Brooks was not clear, but defense counsel argued it was August 29, 1984, because that was a Wednesday which was the only day the "H" dorm prisoners were supposed to receive visitors. Also, defendant attempted to impeach certain portions of Harold White's testimony by showing prior inconsistent statements.

In his first point on appeal, defendant contends the trial court erred in failing to

grant a continuance, or in the alternative, a mistrial, since the state introduced evidence of an alibi statement made by the defendant which was not disclosed to defense counsel until during voir dire. On the day he was arrested, defendant was interviewed by Police Officer Cynthia Caldwell, and he gave her an oral and written statement. The written statement was included on part of a warning and waiver form signed by defendant. He filled in the blanks of the third section of that form which is set out below:

---

**PART III    ALIBI:**

I, ___James Perkins___, hereby state that I was *not* present at ___3919 St Ferdinand___ (Location) on ___8-29-84___ (Date) at ___9:30 P.M.___ (Time)

Having searched my memory, I state without any doubt that I was at ___2918 Marcus___ (Location)

and I was in the company of the following named person(s) who will verify my presence:

| (Name) | (Address) | (Phone) |
|---|---|---|
| Debra Johnson | 3803 Finney | 534-4245 |
| Trice | 2914 Marcus | |

___Det. Cynthia Caldwell___
Interviewer

Witnesses:

___Signature of Person Making Statement___

___8-31-84___ (Date)   ___12:15___ (Time)

Page __2_ of __2_

MPD Form GEN-168

---

Defendant argues that the state's failure to disclose this statement to defense counsel prior to trial violated Rule 25.03, and as a result, he was unable to adequately prepare his defense. Rule 25.03 requires the state to disclose, upon written request of defense counsel, any written or recorded statements and the substance of any oral statements made by the defendant or a co-defendant. Rule 25.16 provides sanctions the trial court may order for failure to comply with an applicable discovery rule. Those sanctions include: ordering such party to make disclosure of material and information not previously disclosed, granting a continuance, excluding such evidence, or entering such other orders as the court deems just under the circumstances. Defense counsel filed a request for discovery on October 12, 1984, and she specifically asked the assistant circuit attorney and his investigator on separate occasions for written statements of defendant. Prior to trial, defense counsel was provided with a copy of the first page of the warning and waiver form, but she did not receive a copy of the second page which included the alibi statement. Although defense counsel was aware that defendant made an oral statement which he was asked to put down in writing, she was not aware of the substance of the alibi statement.

The trial began in the morning of Tuesday, March 12, 1985. After the state completed voir dire examination and after a noonday recess, both counsel had a discussion with the judge in chambers concerning the alibi statement. Defense counsel, then aware that the state planned to use the statement at trial, advised the court that she still did not have a copy of the statement. As a result, she had prepared for trial without knowledge of its content. Defense counsel read the statement during

this discussion in chambers, but it is not clear from the record if she received a copy of the statement. The state admitted it was an oversight that defense counsel did not receive a copy of the statement prior to trial. Since defense counsel had not had a chance to talk to the persons whose names were listed on the statement, she requested that the statement be excluded or that she be given time to talk to the persons. The trial judge determined that after voir dire was completed defense counsel would have until 2:00 p.m. the following day (Wednesday) to investigate the facts contained in the statement. The trial judge also stated he would not start trial on Thursday until 2:00 p.m. if defense counsel requested more time to investigate on Wednesday night. The court adjourned following voir dire at about 5:30 p.m. At 2:00 p.m. on Wednesday, the state began its case, and the court adjourned at about 5:00 p.m. The issue concerning the statement did not come up on Wednesday, nor did defense counsel make a request to have time on Thursday to investigate, so the trial resumed at 9:30 a.m. on Thursday.

The issue concerning the statement did not arise again until Thursday afternoon during the presentation of defendant's case. Defendant called Officer Cynthia Caldwell to testify concerning statements Harold White made to her about the circumstances of the crime. On cross-examination, the state attempted to ask Officer Caldwell about the alibi statement. Defense counsel objected and requested to approach the bench. The court excused the jury for a recess while the court took up defendant's objections in chambers. Defense counsel argued that the alibi statement be excluded and that defendant be granted a continuance, because she still had not been able to talk to either of the two persons whose names were listed on the statement. In relation to the efforts made to contact these two persons, defense counsel explained that her investigator believed that Debra Johnson was in Los Angeles, that he had her address, and he was trying to get her phone number. However, defense counsel stated it would take two

days to a week to locate the person named Trice. (This was not the same person as Demetrius Trice who was referred to in Harold White's testimony.) The trial judge denied defendant's requests for exclusion and for a continuance prior to Officer Caldwell's testimony concerning the alibi statement. However, the trial judge stated that on the following day he would consider giving defendant a continuance if necessary to contact Johnson or Trice. Then, the trial resumed and the state continued its cross examination of Officer Caldwell. When she was asked about the warning and waiver form, defense counsel objected based on the discussion in chambers and requested that her objection be considered a continuing objection to all matters. The trial judge overruled the objection but allowed it to be a "continuing objection by agreement." Officer Caldwell testified that defendant made the alibi statement, that it was put in writing on the warning and waiver form, and that he signed it in her presence. The entire warning and waiver form was admitted into evidence as state's exhibit number six over another objection by defense counsel based on the grounds she had previously mentioned. Following Officer Caldwell's testimony, defendant completed his case. The state presented rebuttal evidence and the trial recessed at 4:50 p.m. until 10:15 a.m. the next day.

That next day (Friday), prior to the closing arguments, defense counsel again requested a general continuance because she still had not been able to talk to Trice or Johnson. She stated that they had determined that Trice's correct name was Oscar Cooksey, and they knew where he used to work, but that business had since closed. She determined it would take more than a couple of days to locate him. Concerning Debra Johnson, she stated they had three phone numbers in Los Angeles, but she had not been able to reach anyone at any of the numbers even though she called early in the morning (which would have been in the middle of the night in Los Angeles). The trial judge stated that he would not give a

general continuance because there was no assurance that either of these people would be found, and their testimony would be contradictory to the alibi defendant presented at trial.

■ The imposition of sanctions upon the state's failure to disclose evidence is within the sound discretion of the trial court. *State v. Carr,* 610 S.W.2d 296, 299 (Mo.App.1980). An abuse of discretion occurs only where the trial court fails to impose a sanction when the undisclosed information was of such character that a reasonable likelihood existed that it would have affected the outcome of the trial. *Id.* The defendant must show that the failure to timely produce the evidence resulted in fundamental unfairness or prejudice to his substantial rights. *State v. Estes,* 631 S.W.2d 121, 122 (Mo.App.1982); *State v. Davis,* 556 S.W.2d 45, 47–48 (Mo. banc 1977). In this regard, the discovery rules are designed to prevent surprise and deception. *State v. Wells,* 639 S.W.2d 563, 566 (Mo. banc 1982). Even if the state's failure to disclose is merely the result of negligence, as opposed to a nondisclosure through deceit or guile, fundamental unfairness can still occur. *State v. Carr,* 610 S.W.2d 296, 298–99 (Mo.App.1980).

■ Reviewing defendant's first point, we conclude that *State v. Harrington,* 534 S.W.2d 44 (Mo. banc 1976) is dispositive. In *Harrington,* the state failed to produce a statement made by Harrington that the shooting of the victim was accidental, which was inconsistent with Harrington's trial theory of self-defense. The statement was not produced by the state until shortly before voir dire. Our Supreme Court held that the failure of the state to deliver a copy of the statement to defendant's attorneys prior to trial was fundamentally unfair and resulted in prejudicial error. *Id.* at 48. The court, relying on *State v. Scott,* 479 S.W.2d 438 (Mo. banc 1972), stated that "truth is best revealed by a decent opportunity to prepare in advance of trial." 534 S.W.2d at 46. In addition, in *Harrington,* the court determined that, "Simple justice requires that a defendant [and his attorney] be permitted to prepare to meet what thus looms as the critical element of the

case against him." *Scott,* 479 S.W.2d at 442, quoted in *Harrington,* 534 S.W.2d at 47.

Here, the state admitted negligence in failing to produce defendant's alibi statement prior to trial. The state did not produce the statement until after the assistant circuit attorney completed voir dire examination, which was even later than the disclosure in *Harrington.* Defense counsel argued at that time, and throughout the trial, that defendant's statement should be excluded because she had not been able to prepare a defense that properly considered the statement. Defendant's evidence attempted to show that he was at the medium security institution until about 9:15 p.m. on the night of the shooting. Defendant's written statement indicated that he was with Johnson and Trice (Cooksey) at 2918 Marcus at 9:30 p.m. that night. The trial judge found the two alibis to be contradictory and the state argued in closing argument that defendant could not have been at both places.

Defense counsel prepared for trial without any knowledge of the substance of defendant's statement. Furthermore, the trial court did not allow defense counsel sufficient time to contact either Johnson or Trice (Cooksey). The record indicates that defense counsel, under the constraints of a trial, made diligent efforts to contact these persons, but was unable to do so. However, she did demonstrate that it was probable that she would be able to contact these persons in the near future.

Defendant has shown that the statement was of such character that a reasonable likelihood existed that it could have affected the outcome of the trial. Although the trial judge found the alibis to be contradictory, the record does not necessarily support this finding. If the state had properly disclosed the statement prior to trial, the contradictory aspects of the alibis may have been resolved. The statement indicated that defendant was at 2918 Marcus at 9:30 and the trial evidence indicates he was at the medium security institution until about 9:15. Thus, the statement may have

established that defendant was not at the scene of the crime. Unfortunately, the trial judge failed to provide defendant sufficient opportunity to substantiate the facts contained in the statement.

The quest of pretrial discovery is not merely to assist the defendant or the state but to arrive at the truth. Here, the quest was aborted by the state's failure to disclose the alibi statement. Defendant was unable to prepare his defense because of the state's violation of Rule 25.03. The trial court's failure to order an appropriate sanction constituted an abuse of discretion, resulting in fundamental unfairness to the defendant. Defendant's first point is meritorious.

■ In his second point on appeal, defendant contends that the trial court erred in permitting Marsha White to testify concerning a statement her husband made prior to his leaving the house on the night he was shot. In response to a question during direct examination asking what he told his wife, Harold White testified, "That I was fixing to leave, and if anything happened to me, that I left with James Perkins and Baby Brother." Marsha White testified on direct examination that she and her husband were home at approximately 9:00 p.m. on August 29, 1984, but that her husband left at approximately 9:15 p.m. She was asked whether her husband told her who he was going with, and she merely responded, "Yes he did." She gave no other testimony concerning her husband's statement or concerning the circumstances of that evening. In fact, the trial court prohibited Mrs. White from testifying as to what her husband specifically told her.

Defendant argues that Mrs. White's testimony bolstered the credibility of her husband's statement which identified defendant, and that it was improper to allow this testimony because defendant did not attack the credibility of this particular statement. See State v. Degraffenreid, 477 S.W.2d 57, 64 (Mo. banc 1972). However, Mrs. White's testimony did not identify defendant as a person that her husband left with on the evening he was shot. Furthermore, her testimony failed to establish a substan-

tial basis for the inference that her husband specifically identified the defendant. State v. Valentine, 646 S.W.2d 729, 732 (Mo.1983); State v. Atkins, 545 S.W.2d 656, 658 (Mo.App.1976). We conclude that the trial court did not err in allowing the limited testimony of Mrs. White.

In defendant's third point on appeal, he argues the trial court erred in sustaining the state's objections to valid areas of voir dire. In reviewing defendant's third point, we recognize that counsel should be allowed reasonable latitude in the examination of prospective jurors, but there are limits to the scope of permissible examination. State v. Norton, 681 S.W.2d 497, 498 (Mo.App.1984). Even though the subject matter may be appropriate for voir dire examination, the manner of asking the question may render it improper. Id. at 499. The matter, extent and propriety of questions addressed to prospective jurors are subjects of the trial court's discretion, and the exercise of that discretion will not be disturbed unless manifest abuse is shown. Id. at 498. The party asserting such manifest abuse has the burden of demonstrating prejudice. Id. We have reviewed the voir dire examination and find no abuse of discretion.

Judgment reversed and remanded.

KAROHL, P.J., concurs.

GARY M. GAERTNER, J., dissents in separate opinion.

GARY M. GAERTNER, dissenting.

I do not believe that the state's untimely disclosure of defendant's written alibi statement resulted in fundamental unfairness or substantial prejudice to the defendant's rights. I cannot, therefore, join the majority in reversing defendant's conviction.

When the state disclosed defendant's alibi statement during voir dire the trial judge allowed defendant sufficient time to locate and produce those persons named in the alibi statement. In addition to delaying the beginning of trial on Wednesday until 2:00 p.m., the trial judge offered to begin

at 2:00 p.m. on Thursday if defense counsel requested more time to investigate. Defense counsel apparently did not consider this additional time necessary, because she made no request to delay Thursday's proceedings.

Defendant's failure to produce the persons named in the alibi statement lends credence to the trial judge's conclusion that the alibi statement contradicted the alibi that defendant presented at trial. Indeed, defense counsel admitted the contradictory nature of the alibi statement during pretrial proceedings, arguing that its admission into evidence would be "particularly damaging" to the alibi that defendant had prepared for trial.

Any prejudice to defendant's rights resulted from his having entangled himself in the intricate web of his own conflicting alibis. By reversing defendant's conviction, the majority has allowed defendant to escape the unfortunate consequences of his duplicity.

For the foregoing reasons, I respectfully dissent.