STATE of Missouri, Respondent,

v.

Denis L. SLAGLE, Appellant.

No. WD 65822.

Missouri Court of Appeals, Western District.

Nov. 28, 2006.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Assistant Attorney General, Jefferson City, MO, for respondent.

Kent Denzel, Assistant Public Defender, Columbia, MO, for appellant.

Before HOWARD, C.J., and BRECKENRIDGE and NEWTON, JJ.

VICTOR C. HOWARD, Chief Judge.

Defendant Denis L. Slagle was convicted of two counts of first-degree statutory sodomy, one count of possession of child pornography, and one count of stealing by deceit. He now seeks relief after the trial court denied his motion for a new trial. He argues that the trial court erred by denying his request for a continuance, refusing to order a mistrial after the State and several witnesses alluded to other possible victims, and refused to allow him to question witnesses about the State's lack of medical examination of the victim.

### Background[1]

Slagle sexually assaulted his ten-year-old neighbor A.D. while posing as an agent for a fictitious government agency charged with the protection of abused children. Slagle told A.D. and others that, as part of his duties for the government, he had to "test" A.D. for abuse. He used this as a subterfuge for his own abuse of A.D. The abuse occurred on average twice weekly for roughly two months. It included sodomy and the taking of pornographic pictures of A.D. During this time, Slagle told his neighbors that he worked for the government to protect "children" but A.D. was his main case. On multiple occasions, he also admitted to having intimate knowl-

---

1. Slagle's statement of facts in his appellate brief does not comply with Rule 84.04(c). *See also* Rule 30.06(c). It discusses numerous facts unnecessary to the determination of the issues in this appeal and is far from concise. Our restatement of facts will be drawn entire-ly from the State's statement of fact, the record, and facts described by Slagle in his argument section. Dismissal of the appeal would be a too "harsh remedy." *In the Interest of P.G.M.,* 149 S.W.3d 507, 509 n. 1 (Mo.App. S.D.2004).

edge of A.D.'s anatomy in graphic and vulgar terms.[2]

The State filed an information against Slagle on September 27, 2004. He received the initial discovery packet on October 4, 2004. Later in October, the court set a trial date for March 28, 2005. On March 10, 2005, the court held a hearing and endorsed Joyce Estes, A.D.'s counselor, as a witness. She was not endorsed as an expert. At that same March 10, 2005, hearing, Slagle requested a continuance which was denied. Slagle renewed his request on March 24. He argued that even with due diligence he would be unable to find his own computer expert. By this time Slagle had not yet filed a motion to request the computer for independent examination. After Slagle assured the court there would be adequate time to pursue the computer expert with the proposed continuance, a continuance was granted and trial rescheduled for May 31, 2005.

On May 2, 2005, the State requested a second continuance. The State complained that several of their witnesses would be unavailable to testify at the then proposed May 31 trial as they had scheduled vacations. Without stating the reasons for doing so, Slagle objected to another continuance. The court ordered the second continuance, and the trial was rescheduled until June 20. Slagle received a copy of the computer hard drive on May 31. On June 9, 2005, the State sought to endorse Estes, A.D.'s counselor, as an expert witness. She had previously been endorsed as a fact witness. The court overruled Slagle's objection to the counselor's endorsement as an expert witness.

On June 16, 2005, four days before the scheduled start of the trial, Slagle filed an additional motion for a continuance. He complained that he did not have sufficient time to prepare for the counselor's expert testimony and he had insufficient time to work with the computer hard drive. This request, for a third continuance, was denied, and the trial proceeded as scheduled.

At trial, the counselor spoke generally about the profile of a child sexual abuse victim and why victims may provide inconsistent dates and stories to investigators. Several witnesses and the State alluded to the fact that Slagle had stated that his fictitious work with the government involved the protection of children. Also, on two occasions the State introduced evidence of Mr. Slagle's vulgar comments concerning A.D.'s anatomy. Slagle argued the introduction of his own lewd statements entitled him to introduce evidence showing that the State had no medical evidence of abuse. The trial court disagreed. The defendant was convicted as a prior offender and sentenced to two concurrent life sentences on the sodomy convictions and one year each for the two misdemeanor convictions.

## Continuance

### Standard of Review

■ Trial courts have broad discretion to delay trial by continuance. A ruling on a request for continuance will only be reversed upon a "very strong showing" that the court abused its discretion. *State v. Thompson*, 985 S.W.2d 779, 785 (Mo. banc 1999). Also, the moving party must make a strong showing of prejudice to overturn a denied request for a continuance. *State v. Middleton*, 995 S.W.2d 443, 465 (Mo. banc 1999).

---

**2.** During this period, Slagle also posed as an agent of his landlord and collected rent without remitting it to the landlord. This charge does not seem to be at issue in the current appeal.

### Analysis

Slagle argues the court abused its broad discretion by failing to order a third continuance. He contends that he was entitled to a continuance for four reasons: the State endorsed a previously endorsed witness as an expert approximately three weeks prior to trial; Slagle did not receive the counselor's expert opinions until one week prior to trial; Slagle was only able to depose the counselor as an expert three days before trial; and Slagle's computer expert had not finished examining the computer hard drive by the Friday before the Monday trial because he only received the computer twenty days prior to trial.

We first discuss Slagle's contention regarding the computer hard drive and his expert's analysis of it. Slagle made assurances to the court in his earlier request for a continuance that he would be able to retain a computer expert and have that computer expert ready by the then scheduled May 31 trial date. A court may rely on a party's statements when granting an initial continuance. Also, Slagle had in his possession for nearly four months the State's report on its examination of the computer. Slagle had nearly one month more to prepare than what he would have had had the trial occurred as planned. Furthermore, Slagle's expert had twenty days to work on the hard drive itself. Slagle does not explain why twenty days was insufficient. Inadequate preparation is not grounds for a continuance where there has been ample opportunity to prepare. *State v. Taylor*, 944 S.W.2d 925, 930 (Mo. banc 1997). Slagle had ample opportunity to prepare. Moreover, Slagle does not contend that there was any exculpatory evidence on the computer. The trial court did not abuse its discretion by not affording Slagle additional time to examine the computer hard drive.

The remainder of Slagle's argument involving the continuance centers on the testimony of A.D.'s counselor and her late endorsement as an expert witness. For the majority of his trial preparation, Slagle was led to believe the counselor would be a fact witness; however, she offered only expert testimony.

Slagle relies on three cases to support his contention that the trial court erred in not ordering a third continuance. In each of these three cases, the State introduced evidence which directly undermined the defendant's theory either while the trial was already occurring or the day before.

In *State v. Whitfield*, 837 S.W.2d 503 (Mo. banc 1992), the Missouri Supreme Court ruled that the trial court ought to have ordered a continuance after the State notified defendant that three pieces of highly incriminating evidence would be admitted the day before trial. *Id.* at 506–08. The State had engaged in discovery misconduct by notifying the defendant of the new evidence at the late date. *Id.* The introduction of the evidence, without an adequate opportunity for the defendant to examine it, eviscerated the defendant's theory. *Id.*

In *State v. McIntosh*, 673 S.W.2d 53 (Mo.App. W.D.1984), the trial court allowed the State to endorse an eyewitness to the charged crime the day before trial. *Id.* at 54. The eyewitness directly contradicted the defendant's theory that he had merely received stolen goods and was not at the crime scene. *Id.* at 55.

In *State v. Perkins*, 710 S.W.2d 889 (Mo. App. E.D.1986), the State failed to produce defendant's alibi statement until after the trial had begun. *Id.* at 891. The evidence that the State intended to present conflicted with the defendant's alibi. *Id.* at 893.

The three cases described above are of a variety in which the new evidence posed

the defendant with an entirely more debilitating and unexpected threat than that of the instant case. Here, Slagle complains of expert testimony, which he received notice of ten days before trial. Slagle received a summary of her opinions one week before trial, and the counselor was available for deposition three days prior to trial. Slagle had sufficient time to engineer a strategy to lessen the effectiveness of her testimony. This is evidenced by Slagle's relatively effective job in impeaching the counselor by calling her qualifications into question. Furthermore, her expert testimony concerned a peripheral issue, unnecessary for conviction. She spoke mainly to the profile of a child sexual abuse victim and why their stories may be vague or inconsistent. She was not an eyewitness to the crime, nor did she attack a central theory of defense. Slagle cites no case remotely similar to the current set of facts where the denial of a continuance was overturned on appeal.

More importantly, Slagle makes virtually no showing that he was prejudiced. He obliquely states "the State through [sic] a monkey wrench into his time for trial preparation." Slagle does not explain how more time to prepare would have made his defense more effective. He only states that more time would have helped. We cannot grant relief without a showing that Slagle was prejudiced. We have no such showing here.

The trial court was well within its discretion by not ordering a third continuance.

## Allusion to Other Uncharged Abuse

### Standard of Review

Trial courts are endowed with broad discretion to admit and exclude evidence during trial. *State v. Mozee*, 112 S.W.3d 102, 105 (Mo.App. W.D.2003). We review their discretion for clear abuses only. *State v. Simmons*, 955 S.W.2d 729, 737 (Mo. banc 1997). The trial court has the best vantage to determine the prejudicial effect, if any, of an improper statement and if the prejudice is so great as to warrant a mistrial. *State v. Johnson*, 901 S.W.2d 60, 62 (Mo. banc 1995). Furthermore, mistrial is a drastic remedy, which should only be employed in extraordinary circumstances. *State v. Sidebottom*, 753 S.W.2d 915, 919–20 (Mo. banc 1988).

### Analysis

Slagle argues the trial court's denial of his motion for a mistrial after the State and several witnesses alluded to the possibility of multiple victims was an abuse of discretion. This, argues Slagle, impermissibly allowed the jury to convict based on what Slagle may have done to other victims, not based on the State's evidence of the abuse of A.D.

Several times during trial, either the State in its questioning or witnesses in their response to questioning described the lies Slagle told concerning his work for the government. Many of these statements involved Slagle's self-proclaimed duty to protect "children" or "kids." In one instance, Slagle's roommate was asked where Slagle told her he worked. She answered he worked for the government, "[p]art of a program with children, abused, molested children." On another occasion, a police officer testified that Slagle stated he did testing on "boys" for the state. Slagle did not object. Later, the State questioned a witness concerning Slagle's lies concerning his involvement with the bogus child protection agency. The questioning referred to "children" Slagle said he worked with. Another witness testified that Slagle said A.D. was his "main case," thus insinuating there might be other cases. Slagle's mother testified that Sla-

gle said A.D. was one of his "cases." The court generally sustained the first objections to allusions to multiple victims, reminding the jury to disregard the question and response, but allowed the later indirect references to Slagle's government work with "children." The court, however, uniformly denied Slagle's motions for a mistrial.

Generally, the State cannot use a defendant's bad character to prove bad conduct in conformity with that character. *State v. Oates,* 12 S.W.3d 307, 313 (Mo. banc 2000). Other uncharged misconduct is generally inadmissible to prove the defendant's propensity to commit the current charged crime. *State v. Barriner,* 34 S.W.3d 139, 144 (Mo. banc 2000). The State may not show that the defendant committed other uncharged acts of child molestation, and then argue he, therefore, has the propensity to commit such acts, to prove he committed the charged act of molestation.

Slagle relies heavily on *State v. Burns,* 978 S.W.2d 759 (Mo. banc 1998). In that case, the Missouri Supreme Court found a statute which authorized the admission of uncharged past crimes committed against people under the age of fourteen to show propensity to commit similar crimes on people under the age of fourteen violated the Missouri Constitution. *Id.* at 759. There a defendant was charged with statutory sodomy. *Id.* The State called two witnesses to show the defendant's propensity to commit statutory sodomy by testifying to an uncharged event similar to the charged crime. *Id.* at 760. The Missouri Supreme Court held this violated the defendant's right to be tried for only the offense charged. *Id.*

Slagle's reliance on *Burns* is erroneous for two reasons: the State did not explicitly introduce evidence of other misconduct and, secondly, insofar as the questioning and testimony does speak to other bad acts, it is logically and legally relevant to Slagle's means of accomplishing the charged criminal conduct.

In the current case, the evidence admitted and the questions asked do not speak to actual bad acts committed by the defendant. A reasonably intelligent juror would have recognized these statements for what they were—lies told by Slagle and not as Slagle's truthful admission of doing "testing" for the government on other children. Vague references to other uncharged crimes are insufficient to warrant reversal for trying a defendant for uncharged crimes. *State v. Rush,* 949 S.W.2d 251, 255 (Mo.App. S.D.1997). The defendant's association with other crimes must be clear and definite to run afoul of the general rule of inadmissibility. *Id.* In *Rush,* the defendant's admission in several letters that he was involved in other unspecific crimes was admissible because the letters contained direct admissions he was guilty of the charged crime. *Id.* Furthermore, where in *Burns* the State produced witnesses to state explicitly the defendant engaged in uncharged crimes against children, here evidence was produced which only spoke to the manner in which Slagle deceived the victim and the community. The State did not produce evidence of Slagle's contact with any other specific children or insinuate there were other victims—only that Slagle fabricated a story about working with children to accomplish his crime.

Moreover, even if we ignore the fact that the statements do not speak directly to other crimes, the statements in question are admissible to provide the jury a complete picture of the circumstances surrounding the charged crime.

Evidence of prior misconduct of the defendant, although not admissible to show

propensity, is admissible if the evidence is logically relevant, in that it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on trial, and if the evidence is legally relevant, in that its probative value outweighs its prejudicial effect. *Burns*, 978 S.W.2d at 761. Here the evidence is being used to outline the manner in which Slagle operated, how he committed his crimes. Subject to the above rule, the State is free to offer evidence of motive, intent, absence of mistake or accident, common scheme, or identity. *State v. Sladek*, 835 S.W.2d 308, 311 (Mo. banc 1992). Furthermore, the State may offer evidence to demonstrate to the jury that the uncharged crimes are part of the circumstances surrounding the charged crime. *State v. Cummings*, 134 S.W.3d 94, 103 (Mo.App. S.D.2004). This type of information affords the jury a complete and accurate picture of the charged crime. *Id.* An implicit weakness of the State's evidence is that it provides little explanation for how the abuse could occur for so long with so many people aware of Slagle's contact with A.D. The evidence of the defendant's lies concerning his fictitious job helped the jury understand how the abuse could have occurred. The evidence is thus highly relevant. It details Slagle's mode of operation. Slagle did not just molest a child; he lied to multiple people about his affiliation with a government agency charged with protecting children so that he could gain access to and control over A.D. Slagle's concocted story concerning his involvement with a government agency was inte-

gral to the State's prosecution, not to show that he had multiple victims, but to show the manner in which he accomplished the charged crime.[3]

The trial court did not err by refusing to order a mistrial after the introduction of the statements concerning Slagle's contact with other children.

### Evidence of a Lack of State's Medical Evidence

### Standard of Review

We incorporate the standard of review for the admissibility and exclusion of evidence from the section above.

### Analysis

■ Slagle's final contention is so faulty it tests the limits of Rule 84.19.[4] Slagle argues he was entitled to introduce evidence of and argue the lack of the State's medical evidence because the State twice introduced evidence of his own statement concerning the victim's anatomy. In two instances the State presented evidence that Slagle told witnesses that A.D.'s "butt hole was like the Grand Canyon." Slagle originally offered these comments when explaining to witnesses his lie concerning his association with a government agency charged with the protection of children and his duty to "examine" A.D. Slagle seems to argue that because the State introduced some evidence of A.D.'s anatomy, he is entitled to show the State did not perform a medical examination which would, had the State performed an examination, contradict his own statement. Sla-

---

**3.** If Slagle's proposed rule of law were adopted, then no evidence of his means of committing the crime charged would be allowed. His means of gaining access and control over the victim would be inadmissible under Missouri's False Impersonation statute. *See* RSMo § 575.120 (2000). The evidence of his impersonation of a government agent indi-

cates criminal liability for the uncharged offense of impersonating a government official. This is an absurd result, which we refuse to reach.

**4.** All references to Rules refer to Missouri Supreme Court Rules (2006).

gle equates his own statements to physical evidence, which would open the door to questioning concerning the State's lack of medical examination.

 The State is not required to assemble and present all possible evidence relevant to its case. *State v. Hopson,* 168 S.W.3d 557, 564 (Mo.App. E.D.2005). Furthermore, "a defendant is not entitled to argue an adverse inference from the State's failure" to gather and present all possible evidence. *Id.* Arguing a lack of evidence is impermissible even where that lack of evidence might support a defendant's theory. *State v. Beck,* 785 S.W.2d 714, 720 (Mo.App. E.D.1990). Slagle correctly recites the law of this jurisdiction when he notes this court allows an exception to the above rule if the defendant can prove the State sought such evidence. *State v. White,* 870 S.W.2d 869, 875 (Mo. App. W.D.1993). However, such is not the case here. Slagle's exception has no application to the current case.

In the current case, the State offered the evidence to show Slagle's unabashed admission of inappropriate knowledge of A.D.'s anatomy. It would not have been contradicted by a medical examination because it was not used to prove the truth of the matter asserted or as medical evidence of A.D.'s condition. It was not used to demonstrate whether Slagle's admission was true, but that Slagle admitted to unlawful behavior with the victim, namely "examining" the victim.

## Conclusion

The judgment of the trial court is affirmed for the reasons stated above.

BRECKENRIDGE and NEWTON, JJ., concur.